## GARRETT v. LONDON.

No. 15859—Opinion Filed Oct. 22, 1924.

(Syllabus.)

1. Elections—Primary Election—Contest for Nomination — Insufficient Showing—Denial of Right to Vote.

In a suit begun by a private individual, who was the defeated candidate for nomination at a primary election, against the successful candidate, to contest the nomination of his adversary, allegations in the petition and proof to the effect that certain qualified voters, sufficient in number to change the result of the election, were illegally prevented from casting their ballots, and that such voters, if allowed to vote, would have voted for the defeated candidate, are not sufficient to justify a judgment declaring him entitled to the nomination. The correct rule in such case is that a voter, denied the right to vote, cannot be heard to say for whom he would have voted.

2. Same—Action to Declare Election Void —Evidence — Denial of Right to Vote— Sufficiency to Change Result.

In a suit to have an election declared void, where it appears that by irregularities and fraudulent misconduct of the election officials, certain qualified voters were illegally prevented from registering and voting, it may be shown for the purpose of determining whether such election was void, that such voters would have cast their ballots for the defeated party, and this in order to determine whether such votes would have changed the result of the election and whether, by reason of such conduct, there was such doubt as to the result of the election as to render it void.

3. Same—Party Plaintiff—Private Individual—Interest in Office.

Under section 460, Comp. Stat. 1921, it is necessary that a private individual bringing an action to declare an election void, shall show title to or interest in the office involved superior to that of other members of the general public. Unless such title or interest be shown, the action must be prosecuted by the state through its duly constituted authorities.

Error from District Court, Carter County; Hal Johnson, Judge.

Action by Buck Garrett against E. C. London. Judgment for defendant, and plaintiff brings error. Affirmed.

Ledbetter & Ledbetter and Sigler & Jackson, for plaintiff in error.

Brett & Brett and Kirby Fitzpatrick, for defendant in error.

GORDON, J. This is an action in the nature of a quo warranto brought to contest the nomination to the office of sheriff of Carter county, obtained by the defendant in error at the Democratic primary held on the 5th day of August, 1924. The parties stand here as they stood in the trial court, and will be designated as plaintiff and defendant.

Plaintiff in his amended petition claims that he and defendant were candidates on the Democratic ticket for the office of sheriff at the primary election and that the votes cast at said election have been duly canvassed and the election board has declared defendant nominated, and that a certificate of nomination has been duly issued to defendant. Plaintiff claims, on the one hand, that the election was void on account of various alleged frauds and irregularities, and on the other hand he claims that by reason of these frauds and irregularities, and by reason of the fact that various voters were deprived of the right to vote, and that these voters, if allowed to vote, would have cast their ballot for him; such votes, if they had been counted, for him would have changed the result of the election, and that thereby he would have become the nominee at such

primary, and is entitled to be declared such nominee. Plaintiff alleges in substance:

(1st) That on the day before the election the county registrar arbitrarily and unlawfully struck from the rolls the names of more than 850 duly qualified electors.

(2nd) That said registrar made a list of the names of the voters' so stricken from the rolls and distributed the list to the various election officers and instructed them not to permit the voters thus named to vote at the election.

(3rd) That said registrar was disqualified from holding the office of registrar.

(4th) That defendant is and was a member of an organization which undertook to control and did control the election of sheriff of Carter county, and that certain persons named went to the precinct voting places and gave instructions to election officials not to permit any of the voters whose names had been stricken to participate in the election, and that the officials followed such instructions.

(5th) That by reason of such acts of the registrar and other persons, together with the election officials, more than 850 voters, duly qualified, were prevented from voting. In this connection, it is alleged that at certain precincts the officers refused to allow some of such persons to vote until defendant believed they would vote for him, whereupon defendant sent a note to the officials and permission was then given to such persons to vote. That at several voting places large numbers of qualified voters presented themselves to vote, but were refused the right so to do.

(6th) That many persons went among the negro voters on the day before the election and advised them not to go to the polls, and intimated that they might meet with physical violence; that more than 500 voters were thus kept from the polls.

(7th) That in another instance, the election officials attempted to influence the voters after they had entered the voting places, attempting to persuade them to vote for defendant.

(8th) That defendant, who is the present sheriff, together with his deputies, used his influence at the election, and that he and his deputies went armed to the voting places, thus preventing many from casting their vote. That not less than 1,500 were thus prevented from voting.

(9th) That 2,000 negro Democrats were prevented from voting by threats and intimidation, as aforesaid; that had said negro Democrats voted, it would have been sufficient to change the result of the election, and that for the several reasons aforesaid said election was void.

(10th) That defendant, according to the official count, received 442 votes in excess of the vote for plaintiff, but that if all the legal qualified voters of the county who desired to do so had been permitted to vote, those who were prevented from voting would have cast their vote for plaintiff, thus overcoming defendant's majority, and plaintiff would have been nominated.

Plaintiff therefore prays that the certificate of nomination so issued to defendant be canceled; that plaintiff be declared the Democratic nominee for the office of sheriff, and for other and further relief.

It will be seen that by this petition the plaintiff presents two propositions. He sues, first, to have the election declared void, and second, to have himself, by reason of this alleged void election, declared to be the nominee. These two theories are clearly inconsistent. If the election was void, no candidate could obtain any status as nominee by reason thereof. If, on the other hand, this proceeding is one to determine whether at such election the plaintiff received, or would have received if the election had been properly conducted, more votes than his opponent, then this must be construed to be a proceeding to carve out of an election, otherwise valid, certain illegal features which, when so eliminated, would leave the plaintiff the winner in the contest.

To this amended petition, defendant filed his demurrer, consisting of a number of paragraphs, the first paragraph constituting a general demurrer to the entire petition, and the other paragraphs being directed specifically to the separate paragraphs of plaintiff's amended petition. This cause is before us upon a transcript, and in that transcript the demurrer aforesaid appears before the amended petition, but they were both filed on the same day, and in the oral argument it was agreed that the demurrer was directed to the amended petition. The transcript fails to show any action taken by the court upon this demurrer before answer filed, and we will therefore have to presume that the demurrer was at the time overruled. Answer to the amended petition was duly filed, in which answer denial was made of the substance of the allegations in plaintiff's amended petition, and certain counter charges against the plaintiff and his agents were therein made.

Thereafter, on the 13th day of October, 1924, the parties appeared and announced ready for trial, a jury was impaneled and sworn and the plaintiff called his first witness. The defendant then presented an objection to the introduction of any testimony in this cause, the objection being made upon the ground that plaintiff's petition fails to state a cause of action; that if the allegations of plaintiff's petition are true, the election would be void, and being void, plaintiff could claim no rights thereunder. Thereupon the court indicated his intention to sustain this motion, but plaintiff submitted to the court that such action would be equivalent to sustaining a demurrer to the petition and requested that in order to permit the plaintiff to appeal on transcript, the court do not sustain the objection to the introduction of evidence, but to reconsider the demurrer which had theretofore been passed upon and overruled by the court, and the court then sustained the demurrer. The defendant objected to the action of the court in refusing to rule upon the objection to the admission of any evidence. When the court sustained defendant's demurrer, the plaintiff refused to proceed further, but elected to stand upon his amended petition. and the court thereupon dismissed the cause at plaintiff's costs. From this judgment, plaintiff appealed.

The questions here must be considered upon the demurrer, admitting the truth of the allegations of fact for the purposes of the demurrer. We will consider, first, the proposition whether the allegations are sufficient to entitle plaintiff to be declared the nominee at the election. It will be noted that there is no charge that illegal ballots were cast. It is admitted that of the votes actually cast, the defendant received a number sufficient to entitle him to the nomination. But it is claimed that a number of qualified voters were illegally prevented from casting their ballots; that these electors, if permitted to vote, would have voted for plaintiff. That these votes so offered would have been sufficient to overcome defendant's majority, and cause plaintiff to have sufficient votes to entitle him to the nomination. In other words, the trial court was asked to determine how many votes were improperly excluded; how many of these votes would have been cast for plaintiff, and upon such proof, to determine who would have been the nominee. The propriety of this proceeding has been determined adversely to plaintiff in the case of Martin v. McGarr, 27 Okla. 653, 117 Pac. 323. In this case, Martin held the office of mayor of the city of Muskogee. He was elected to this office on April 2, 1907, to hold for one

year and until his successor was duly elected and qualified. Statehood intervened, and on April 27, 1909, an election was held, at which plaintiff, A. F. McGarr, was declared by the election board to have received a majority of 14 votes. Suit was filed by Martin, the incumbent, to have this election declared void. Various charges of fraud and irregularity were made in the petition. A demurrer to the petition was interposed by defendant McGarr, which was sustained by the trial court. This court reversed the ruling of the trial court, holding that the charges, if true, were sufficient to entitle the plaintiff to the relief sought. In this opinion the various authorities are reviewed at length, and on page 665 of the opinion this court says:

"The correct rule is that a voter denied the right of casting his vote cannot be heard to say for whom it would have been cast."

In the opinion, the decision of the Supreme Court of Minnesota, in the case of Pennington v. Hare, 60 Minn. 146, 62 N. W. 116, is quoted with approval, wherein it is said:

"It is not necessary to decide this point, for the record presents the simple question, Can votes not cast, because of an error of judgment on the part of the election officers, be counted as if cast and returned? We are clearly of the opinion that they cannot be. Where a ballot has been marked by the elector, properly cast and returned, we have something tangible and certain to deal with and from it we unerringly read the intention and act of the elector. But where, as in this case, the supposed ballots were never in existence, and we must rely upon the subsequent declaration of the electors as to how they intended to and would have marked and cast their ballots, if they had voted, it would be an uncertain and dangerous experiment to attempt the task of ascertaining and giving effect to their intentions, as ballots actually cast and returned. Uncertain, because it would be simply a matter of speculation; dangerous, because it would give to such electors the power of determining the result of an election, in a close contest. All that it would be necessary for them to do, in such a case, to decide the election, would be to declare that they intended to vote for a particular candidate. It would enable them to sell the office to the candidate offering the highest price for it, because they would not be called upon for their declaration until a contest arose, after the actual ballots had been counted, and the precise effect of their statement known."

With this reasoning we agree. The opinion in Martin v. McGarr, supra, has often been quoted in subsequent decisions in this court. and never. so far as we can learn, has it been overruled.

In Snyder v. Blake, 35 Okla. 294, 129 Pac.

34, this court, on page 304 of the opinion, recognizes the rule as above stated to be the rule in this jurisdiction.

In Ledbetter v. Kimsey, 38 Okla. 671, 134 Pac. 868, this court says:

"Under the rule announced in Martin v. McGarr, a legal voter, qualified to vote at the place where he offers to vote, but who is prevented from doing so by the fraudulent, corrupt, or mistaken conduct of the election officers, may have his vote counted for the purpose of ascertaining whether, if he had voted, the result of the election might have been different, and therefrom it be determined that the result of such irregularities was to throw such doubt about the result of the election as to render the election void."

It will be seen that the counting of such vote was only for the purpose of determining whether the result of the election was so shrouded in doubt as to render the election void.

In Mayberry v. Gaddis, 88 Okla. 286, 213 Pac. 316, the rule allowing the counting of votes of those who were wrongfully prevented from voting is limited as it was in Ledbetter v. Kimsey, to cases where it is sought to declare the election void and the restrictions to and purposes of the rule are again laid down in harmony with the preceding decision.

We are aware that an apparently different rule has been adopted in certain cases in the state of Texas. But the question seems settled in this jurisdiction and nowhere have we found a case from this court where offered votes, under circumstances such as set out in plaintiff's petition, have been allowed to be counted by a court in an effort to declare elected the party defeated by the votes actually cast.

We therefore, turn to the second proposition, which is, under his petition here and under the state of the record, the plaintiff is entitled to pursue his efforts to have the election involved in this case declared void.

Section 6123, Comp. Stat. 1921, places contests arising out of primary elections upon the same plane as those arising out of general elections.

Section 459, Comp. Stat. 1921, provides an action in the nature of quo warranto may be brought—"When any person shall usurp, intrude into, or unlawfully hold or exercise any public office. * * *"

Section 460, Comp. Stat. 1921, provides that where the action is brought by the Attorney General or county attorney, it shall be prosecuted in the name of the state, but when the action is brought by a person claiming an interest in the office, etc., it shall be brought in the name of such person.

Section 461 provides for the rendition of judgment for the damages that plaintiff or persons entitled may have sustained, if any, to the time of the judgment, and section 462 provides that if the judgment be rendered in favor of plaintiff, he shall proceed to exercise the functions of the office, etc. These sections make it clear that the provisions for the commencement of such an action by a private individual in his own name must have been intended to cover cases where such private individual had an interest in the office peculiar to himself, and not such an interest only as was general and inhered in each member of the public at large. It must have been contemplated that the person so suing should, if successful, have been entitled to the office or to some emolument thereof, because it is provided that judgment in his favor shall entitle him to exercise the functions of the office, and in the same action judgment for damages may be rendered in his favor on account of the detention of the office from him. See Am. Dig. Cent. Ed. vol. 41, sec. 41 (D).

In Colorado there is a special statute that a defeated candidate may bring such an action though he may not be entitled to the office, in case of the negligence of the district attorney so to begin action. See, also, State ex rel. Wasson v. Taylor, 50 Ohio St. Rep. 130; State ex rel. Daniels v. Bieler, 87 Ind. 520; Harrison v. Greaves, 59 Miss. 453; Miller et al. v. Town of Palermo, 12 Kan. 14.

Plaintiff in error, in support of his contention that this action may be successfully prosecuted by a private individual, cites us to the case of Whittaker v. State ex rel. Pierce, 58 Okla. 672, 160 Pac. 890. This was a contest over the Democratic nomination for the office of county commissioner for a district of Pittsburg county. At the election the canvass by the county election board showed that Pierce received 250 votes, and Whittaker received 238 votes. Whittaker claimed a recount, and upon such recount, Pierce received 230 votes and Whittaker 244 votes. Pierce brought this action to contest the right of Whittaker to the nomination. In that case both parties were actually claiming the title to the nomination for the office. It was not claimed that the election was void, but the whole controversy arose upon the mutilation and forgery of certain ballots which were found

in the ballot box, so that the decision in that case is not in point here.

Plaintiff in error further cites us to the doctrine that the right to contest an election is not a natural right, but exists, if at all, in the Constitution and statute. We do not question the correctness of this doctrine.

We further find in the case of Roberts et al. v. Marshall et al., 33 Okla. 716, 127 Pac. 703, that—

"A defeated candidate who complains that the returns canvassed by the State Election Board were irregular and fraudulently made by the county board has a remedy by an action in the nature of quo warranto against the holder of such nomination to try the title thereto."

Here again the title to the office was claimed by the party who began the action. We are cited to no case within this jurisdiction where a person not claiming title to office or some peculiar interest therein has been permitted in his own name to prosecute an action to oust the incumbent of the office. The statutes giving this right of action were intended to protect the interest of one claiming the office, but it nowhere appears that it was intended that an individual should be substituted the representative of the public at large to prosecute an action claiming the total invalidity of an election. The power and right to prosecute such action inheres in the sovereignty. It was and is the duty of the duly constituted officials of that county and of this state to proceed in such a case, and if the allegations of plaintiff's petition are true, it is the clear duty of those officials to prevent the consummation of any of such fraudulent proceedings. It may be unfortunate that our statute has made no provision for such an action at the instance of a private individual where the constituted authorities fail to act.

We are therefore of opinion that upon the first proposition, as to the right of the trial court to count those votes as cast which were offered but not received, it must be held, in conformity with the former opinion of this court, that no such right existed. We hold, further, that the plaintiff, if he proceeds upon the assumption that the election was wholly void, has no such private right as will entitle him in his individual capacity to maintain an action to set aside such election.

We are therefore of opinion that the trial court did not err in sustaining defendant's demurrer to plaintiff's amended petition, and the judgment of the trial court is affirmed.

NICHOLSON, HARRISON, JOHNSON, BRANSON, and WARREN, JJ., concur. McNEILL, C. J., concurs in first proposition stated, but dissents as to conclusion that private person is not authorized to maintain the action.