## JACKSON v. ORENDORFF.

No. 20447. Opinion Filed Oct. 1, 1929.

Rehearing Denied Oct. 15, 1929.

Hepburn & Hepburn, for plaintiff in error.

Pitchford & Pitchford, for defendant in error.

CLARK, J. This cause presents error from the superior court of Okmulgee county, wherein B. A. Jackson was plaintiff and J. W. Orendorff was defendant.

Plaintiff's petition contains two separate causes of action. Plaintiff specifically alleges in his first cause of action the fact to be that "because of mistake in conduct of the election officers of precinct 2 of ward 4 of the city of Henryetta, Okla. plaintiff was deprived of one vote."

Plaintiff alleges that plaintiff and defendant were candidates for the office of mayor of Henryetta, Okmulgee county, Okla. and that on the 2nd day of April, 1929, there was an election held in the city of Henryetta, Okla., for the purpose of electing a mayor and other city officials; that plaintiff and defendant were on the ballot in

said election; that the election officials canvassed the result of said election and announced the result; that plaintiff received 1,090 votes and defendant received 1,091 votes; that a certificate of election was issued to defendant, J. W. Orendorff, and the defendant had taken charge of the office of mayor of Henryetta and is now in charge and custody of the same. Plaintiff further alleged he was the duly, legally elected mayor of the city of Henryetta at said election. Plaintiff further alleged that one Mrs. Henry M. Hill, on the second day of April, 1929, was a duly legal and registered voter in precinct No. 2, ward 4, of the city of Henryetta; that she applied to said election officials to vote and was furnished a ballot and that she erroneously and by mistake stamped her ballot opposite the name of J. W. Orendorff for the office of mayor of Henryetta, Okla., when in fact she intended to stamp her name opposite the name of B. A. Jackson, and to vote for him for the office of mayor of Henryetta. That thereupon, and after noticing the mistake she had made, she returned her ballot in the presence of the election officials of said precinct and explained to said officials that she had made a mistake on her ballot and had discoverd that she had stamped the same as indicating that her vote was cast for J. W. Orendorff for mayor of said city of Henryetta, whereas she intended and desired to cast her vote and ballot for this plaintiff, B. A. Jackson, for the office of mayor of Henryetta. That she requested said election officials to take said ballot so erroneously stamped and mark the same spoiled or mutilated and to furnish her with another ballot so that she might cast the same for the plaintiff, B. A. Jackson, for mayor of said city of Henryetta, the person for whom she had in fact desired and intended to vote; that the election officials informed her that they had no right or authority to comply with her request, and refused to furnish her with another ballot; that said election officials advised her that the best course they could advise her to pursue was to take said original ballot back to the voting booth and place a cross mark opposite the name of B. A. Jackson, and explained to her that by so doing her ballot being marked for both candidates for the office of mayor, the same would not be counted for either of said candidates and would be held to be a mutilated ballot so far as said office of mayor was concerned, and that not desiring to lose her vote for other candidates appearing on said ballot, she did as advised by said election officials and deposited her ballot in the ballot box marked for both of said candidates for the office of mayor.

Plaintiff further alleged that if Mrs. Hill had been furnished with another blank ballot as provided by law, she would have marked said ballot in such a way that she would have voted for B. A. Jackson and that said ballot would have been counted for said B. A. Jackson.

Plaintiff further alleges the fact to be that by reason of the mistaken conduct of the election officers of said precinct 2, ward 4, of the city of Henryetta, Okla.. plaintiff was deprived of one vote; that if said vote had been cast and counted for this plaintiff, B. A. Jackson, the result of said election would have been different, that is to say, the result upon the official canvass by the election board of Henryetta would have resulted in a tie, and therefore said election for mayor of the city of Henryetta would have been void; and prayed the court to decree the election for mayor of the city of Henryetta, so held on the 2nd day of April, 1929, to be void, and order canceled the certificate of election issued as aforesaid by said election board of Okmulgee county, Okla., to the said J. W. Orendorff and order the said J. W. Orendorff ousted from said office and this plaintiff inducted therein.

Plaintiff alleged that he had been for two years last past the regularly qualified and acting mayor of the city of Henryetta and that he is in all things qualified to act as mayor of said city.

A demurrer was filed by the defendant to the two causes of action in plaintiff's petition. The demurrer was sustained to the first cause of action and overruled as to the second. From the order sustaining the demurrer to the first cause of action, plaintiff appeals. Plaintiff's petition in error alleges that the court erred in sustaining said demurrer to the first cause of action and dismissing plaintiff's first cause of action.

Section 6198, C. O. S. 1921, provides as follows:

"Should any elector spoil or mutilate his ballot, in his effort to vote the same, he shall fold it and return it in the presence of the election officers, and such elector shall then, in the presence of said officers, destroy said ballot by burning or otherwise, and the clerk of the election shall provide such elector with another ballot, in the same manner that the first one was provided. The clerk shall

indorse upon the proper blank line upon the stub of the spoiled ballot the word, 'Spoiled.' He shall not write the name of the elector upon the stub of the duplicate ballot, but shall write instead the words 'Duplicate of No.———,' giving the number of the stub of the original or spoiled ballot. Any elector refusing to destroy a mutilated ballot, or any election officer permitting an elector to retain a mutilated ballot, shall be deemed guilty of a misdemeanor, and, upon conviction, shall be fined not less than $25 nor more than $500 and be imprisoned in the county jail for not less than 30 days nor more than six months."

Plaintiff in error contends that the allegation in plaintiff's first cause of action brings this case squarely within the rule laid down in Martin v. McGarr, 27 Okla. 653, 117 Pac. 323. With this contention we cannot agree. Under the rule announced in Martin v. McGarr, supra, a legal voter qualified to vote at the place where he offers to vote, but prohibited from so doing by the fraudulent or corrupt acts of election officers, may have his vote counted for the purpose of ascertaining whether if he had voted the result of the election might have been different. In the case at bar there is no charge that Mrs. Hill was prevented from voting by the fraudulent or corrupt conduct of election officials. If the voter so deprived of the right to vote by the mistaken conduct of the election officials and such voter was disfranchised, she was a voluntary party to said disfranchisement. She is presumed to know the law and could have destroyed her ballot and demanded a new ballot if she so desired. Having failed to do so, she cannot be heard to say for whom she intended to vote. This court in the case of Garrett v. London, 107 Okla. 72, 229 Pac. 1074, said:

"In a suit begun by a private individual, who was the defeated candidate for nomination at a primary election, against the successful candidate, to contest the nomination of his adversary, allegations in the petition and proof to the effect that certain qualified voters, sufficient in number to change the result of the election, were illegally prevented from casting their ballots, and that such voters, if allowed to vote, would have voted for the defeated candidate, are not sufficient to justify a judgment declaring him entitled to the nomination. The correct rule in such a case is that a voter, denied the right to vote, cannot be heard to say for whom he would have voted."

The Supreme Court of Minnesota in the case of Pennington v. Hare, 62 N. W. 116, laid down the following rule:

"Where qualified electors offered to vote, but were prevented from actually casting their ballots by an erroneous decision of the election judges, held that such ballots cannot be counted for the candidate the electors subsequently declared they intended to have voted for if they had voted."

In the body of the opinion, page 117, the court said:

"But where, as in this case, the supposed ballots were never in existence, and we must rely upon the subsequent declarations of the electors as to how they intended to and would have marked and cast their ballots, if they had voted, it would be an uncertain and dangerous experiment to attempt the task of ascertaining and giving effect to their intentions, as ballots actually cast and returned. Uncertain, because it would be simply a matter of speculation; dangerous, because it would give to such electors the power of determining the result of an election, in a close contest. All that it would be necessary for them to do, in such a case, to decide the election, would be to declare that they intended to vote for a particular candidate. It would enable them to sell the office to the candidate offering the highest price for it, because they would not be called upon for their declaration until a contest arose, after the actual ballots had been counted, and the precise effect of their statement known. They could swear falsely as to their past intentions, without fear of punishment, for how would it be possible to disprove their statements as to their intentions with reference to a supposed act, if perchance they had acted? Cooley, Const. Lim. 781. It seems a hardship that an elector should lose his vote by reason of an error of the election judges, but errors of judgment are inevitable; and whenever any possible remedy which can be suggested is inconsistent with the highest public interests, they are remediless. The proposition that the title to a public office can be made dependent upon the subsequent statements of an elector as to what he would have done, if he had been permitted to vote, is not only contrary to sound public policy, but seems to be simply unthinkable."

In this case the result of this election would depend on the statement of Mrs. Hill as to her intention as for whom she intended to vote. We think the rule that a voter, through erroneous or mistaken construction of the law by election officials who denied him an opportunity to vote or who was not permitted as alleged in the case at bar to cast a vote for his choice, cannot be heard to say in a contest for whom he intended to vote, is sound.

We must therefore conclude that the judgment of the trial court sustaining a demurrer to plaintiff's first cause of action and dismissing the same was correct and should be, and is, affirmed.

LESTER, V. C. J., and HUNT, RILEY, CULLISON, SWINDALL, and ANDREWS, JJ., concur. MASON, C. J., and HEFNER, J., absent.

Note.—See "Elections," 20 C. J. § 200, p. 169, n. 51.