## RICHARDSON et al. v. GREGG et al.

No. 19258.   Opinion Filed July 1, 1930.

Commissioners' Opinion, Division No. 2.

Blanton, Osborn & Curtis, for plaintiffs in error.

S. D. Williams, for defendants in error.

EAGLETON, C. This is an appeal from a judgment of the district court of Garvin county in a suit filed by defendants in error, as tax-paying voters of district No. 32, declaring void and illegal an election held for the purpose of issuing bonds to build a schoolhouse in said district and permanently enjoining the issuance of bonds pursuant to said election. At said election 119 votes were cast, 72 of which were for the bonds and 47 against. The parties will be referred to as they appeared in the trial court.

Unless two persons, W. A. Hargis and Lillie Hargis, his wife, who offered but were refused the right to vote, were entitled to vote, the bond election was carried by a three-fifths majority as required by law. (Constitution, art. 10, sec. 26.) A school district election is void where qualified electors are corruptly and fraudulently deprived of an opportunity to vote sufficient in number, had they been counted for the losing side, to have changed the result of the election. Martin v. McGarr, 27 Okla. 653, 117 Pac. 323. This case was cited with approval in Jackson v. Orendorff, 139 Okla. 82, 281 Pac. 147. It is contended by plaintiffs in error that Hargis and his wife were not qualified electors and had no right to vote in said election, and in the second place that even if they were qualified electors, their vote was challenged and they waived their right to vote by refusing to make an affidavit as to their qualifications as required by the school board, who under the law were acting as election officials in holding said election.

Mr. and Mrs. Hargis had lived in Oklahoma for many years, though their immediate place of residence seems to have changed frequently. According to their own testimony, which is unrefuted, Garvin county had been their home for at least four or five years preceding this election. They had lived within this school district since April 23rd preceding this election held on July 14, 1927. The defendants insist that these parties were not residents of the school district, but were in fact transients. It is true these parties did not own property in Garvin county, but they had lived there. Mr. Hargis was a laborer, working sometimes on farms, sometimes in town; he went where he could gain employment. The year before this election he spent some three months in Texas picking cotton, and had his family with him. He had, however, some of his household things stored in Garvin county during that period, and returned to Garvin county thereafter. The year this election was held he rented a farm in the school district and farmed it. It seems that he sold his crop and was again returning to Texas to pick cotton before this trial was had, which caused the taking of his deposition, but the fact that his employment took him from place to place does not destroy his residence. 20 C. J. page 69, states the general rule.

"While there is no absolute criterion by which to determine one's place of residence, but each case must depend upon its particular facts and circumstances, yet three rules seem to be reasonably established: (1) That a man must have a residence somewhere; (2) that when once established it is presumed to continue until a new one is established; and (3) that a man can have but one domicile of citizenship at a time."

To the same effect is Stevens v. Union Graded School Dist. No. 2, 136 Okla. 10, 275 Pac. 1056. This court in a recent decision, Jones v. School Dist. No. 96 et al., 144 Okla. 10, 289 Pac. 268, determined the qualifications of voters in school bond elections, saying:

"Under the Constitution, art. 10, sec. 26, and art. 3, sec. 1, a voter or elector qualified to vote at a school district bond election is one who possesses all the qualifications enumerated in the Constitution, and who is a bona fide resident of the school district."

That is, that he must have resided in the state one year, in the county six months, and in the precinct 30 days. The fact that Mr. and Mrs. Hargis were in Texas for a few months during the cotton picking season did not change their domicile and did not cause them to lose their residence so as to defeat their right to vote. Were the election officials permitted to pass on the qualifications of those offering themselves to vote, as they did in this case, they might endeavor to make an intelligence test qualification and find that no one is qualified to vote who differs with them, the election officials, on how they should vote. The Constitution saves the election officials from this burdensome task, from assuming this responsibility, and if they see that the constitutional requirements are met, they may feel satisfied in mind and conscience that they have fully performed their duty to their state or municipality. Thomas v. Reid, 142 Okla. 38, 285 Pac. 92. These parties in offering to vote apparently were fully qualified to vote, and no reason appears for refusing to permit them to exercise that right which is theirs under our Constitution, and the denial of this privilege to Hargis and his wife was fraudulent.

We next come to the claim of the defendants that Mr. and Mrs. Hargis waived their demand to vote by refusing to make affidavit as to their qualifications. The duty of the election board in case a voter is challenged is prescribed in section 10341, C. O. S. 1921, which reads:

"If any person offering to vote at a school district meeting shall be challenged as unqualified by any legal voter, the chairman presiding shall declare to the person challenged the qualifications of a voter, and if such challenge be not withdrawn, the chairman, who is hereby authorized, shall tender to the person offering to vote the following oath or affirmation: 'You do solemnly swear (or affirm) that you are an actual resident of this school district and that you are qualified by law to vote at this meeting.' Any person taking such oath or affirmation shall be entitled to vote on all questions voted upon at such meeting."

Mr. Richardson, who seemed to be in charge of the election when these parties presented themselves to vote, testified that he told them that he was advised that they were not qualified voters and that he must challenge their vote, and that he told them, further, to be qualified that they must have been within the state for the preceding year, Garvin county the preceding six months, and in the precinct the preceding 30 days, and that if they had not been there for that period, they were not qualified, but that if they would make affidavit that they had been in Oklahoma a year, Garvin county the preceding six months, and in the precinct there 30 days, he would let them vote, and that he advised them that he did not think they were entitled to vote. He did not offer them the affidavit prescribed by statute, excusing himself by saying that they left before he had a chance to prepare the affidavit. He did state that he offered to prepare an affidavit for them. On the other hand, Mr. and Mrs. Hargis each testified that he told them that if they had been out of the state within a year they were not qualified voters and that he would advise them not to vote. They further testified that he told them that they must have lived in the state for at least twelve months.

Mr. Hargis testified with reference to this challenge:

"He said if I would sign an affidavit that I had not been out of the state for the last 12 months, I could vote."

Mrs. Hargis testified:

"He said he would have to challenge our vote, that we hadn't been in the county long enough, that we had to be a resident of the state a year, county 6 months and district three months to vote."

Each of these parties testified that they would have signed the qualifying affidavit required by section 10341, C. O. S., if it had been offered them.

When Mr. and Mrs. Hargis came out of the place where the election was held and explained why they had not voted, they said they had been scared off. There is other corroborating evidence sustaining the testimony of Mr. and Mrs. Hargis.

As is said in 20 C. J., page 181:

"If the statute simply provides that certain acts or things shall be done in a particular time or in a particular manner without declaring that their performance is essential to the validity of the election, they will be regarded as mandatory if they affect the actual merits of the election, and directory if they do not. Where the terms of the statute are absolute, explicit, and peremptory, no discretion is given; and when penalties are imposed against the violation of its respective terms they have

the same effect as negative words and render its observance imperative. But this rule must be considered in connection with another rule that a statute prescribing the duties of election officers may be held either mandatory or directory according to the time and manner in which it is questioned. Before election it is mandatory if direct proceedings for its enforcement are brought, but after election it should be held directory, in support of the result, unless of a character to effect an obstruction to the free and intelligent casting of the vote, or the ascertainment of the result, or unless the provisions affect an essential element of the election, or it is expressly declared by the statute that the particular act is essential to the validity of the election, or that its omission will render it void."

McCrary on Elections, sec. 680, says:

"It is scarcely necessary to say that no statute regulating elections can be complete without containing ample provision for the prevention of every species of intimidation of voters, whether by violence, the exhibition of force, threats, or other means. * * * The law should be so framed as to guard with scrupulous care the perfect freedom of the ballot, and every attempt to rob even the poorest and weakest elector of his free choice should be regarded as high crime, since the rights of all are involved in the question of the protection of the rights of each." (See, also, Burns v. Lackey [Ky.] 186 S. W. 909.)

The Supreme Court of Colorado in Neelley v. Farr, 158 Pac. 458, says:

"It is the essence of free elections that the right of suffrage be untrammelled and unfettered, and that the ballot represent and express the elector's own intelligent judgment and conscience, and there can be no 'free election' unless there is freedom of opinion. An election to be free must be without coercion of any description or any deterrent from the elector's exercise of his free will by means of any intimidation or influence whatever, although there is no violence or physical coercion."

A Pennsylvania case well states the rule in DeWalt v. Bartley, 146 Pa. 529:

"An election to be free must be without coercion of every description. An election may be held in strict accordance with every legal requirement as to form, yet, if in point of fact the voter casts the ballot as the result of intimidation; if he is deterred from the exercise of his free will by means of any influence whatever, although there be neither violence nor physical coercion, it is not a free and equal election within the spirit of the Constitution."

The Constitution guarantees a "free and equal election," which means "no impediment or restraint of any character shall be imposed upon him, either directly or indirectly, whereby he shall be hindered or prevented from participation at the polls." Ex parte Wilson, 7 Okla. Cr. 610, 125 Pac. 739, 746. (Constitution of Oklahoma, article 3, sections 6 and 7.)

Were Mr. and Mrs. Hargis intimidated? Were they permitted to exercise freely their right to vote? Were they correctly advised as to the law of this state as to the qualifications of a voter? Were they offered the proper affidavit which they might sign and avail themselves of their right to vote? The trial court saw the witnesses, heard the evidence, and was fully advised, and he found that they were not permitted to vote and that they had not waived their right to vote. The conduct of the election officials in denying these parties their vote as proved in this case amounted to a fraudulent denial of the right of qualified electors to cast their votes. The record well sustains this determination. This court on the review of an equity case will examine and review the evidence, but will not reverse the same unless it is against the clear weight of the evidence. We do not find that the judgment of the trial court in this case is against the clear weight of the evidence. The cause is affirmed.

BENNETT, TEEHEE, HALL, and HERR, Commissioners, concur.

By the Court: It is so ordered.