## MYERS et al. v. HINES et al.

No. 20060. Opinion Filed June 9, 1931.

Bond & Bond, for plaintiffs in error.

Sandlin & Winans, for defendants in error.

CLARK, V. C. J. This is an equitable action commenced in the district court of Stephens county by the defendants in error, George W. Hines and Martha Hines, against L. H. Myers, Maggie C. Myers, and Federal Land Bank of Wichita, Wichita, Kan. The plaintiffs dismissed the action as against the Federal Land Bank.

The parties will be referred to as they appeared in the trial court.

The plaintiffs alleged that they sold and conveyed to the defendants 190 acres of land described in the petition; that there was at that time existing on all of said lands an oil and gas lease; that it was mutually agreed between them that plaintiffs were to reserve all of the oil and gas produced from 60 acres of said land, which 60 acres is described in said petition; that the reservation in said deed reads as follows:

"It is understood that all the above land is leased for oil. It is expressly understood that the undivided one-eighth interest is herein reserved in and to all oil and gas produced from the SE¼ SE¼ and E½ SW¼ SE¼, sec. 36, township 1 south, range 4 west."

By mutual mistake of grantors and grantee the scrivener in drawing the reservation caused same to read as set out, but that said reservation, to properly express the mutual agreement and intention, should have recited "reserved all of the oil and gas on said 60 acres of land and all the oil and gas rights in and to the same." Prayed that they be decreed the owner of all oil and gas rights in, and all oil and gas produced or to be produced from, said 60 acres, subject to the oil and gas lease, and that their title

be quieted in and to said interest in said lands.

Demurrer was filed to petition on the grounds it did not state a cause of action; that the action, if any, is barred by the statute of limitations; that the deed sought to be reformed shows to convey a fee-simple title to the lands. Demurrer was overruled.

Defendants L. H. Myers and Maggie C. Myers filed a general denial, and further denied there was a mutual mistake as to the reservation; that the provision in the deed is in strict accordance with the agreement; that the statute of limitations has run against the plaintiffs, and the cause of action, if any, they ever had; that plaintiffs have never contended before the filing of the petition that there was any mutual mistake in the execution of the deed, but that the plaintiff has ratified by oral admissions the provision in said deed and stated he had no other or greater interest in the oil and gas rights in said land than provided in the deed. Prayed that plaintiffs take nothing by the suit, and he denied the relief prayed for.

By way of reply plaintiffs filed general denial.

The deed given by plaintiffs to defendant, which is an exhibit to the petition, was dated October 5, 1918. Recorded November 23, 1918. The petition in the case was filed May 3, 1926.

Judgment was entered for defendants for the bonus money paid for oil and gas lease and delay rentals that should accrue under an oil and gas lease that might be placed on the premises, and judgment for plaintiffs for an undivided one-eighth part of all the oil and gas that may be at any time produced by anyone, and quieted title of plaintiffs to said one-eighth of all the oil and gas produced from the premises and reserved by plaintiffs. Motion for new trial filed by defendants; overruled. Defendants bring the cause here for review.

Plaintiffs in error contend that the court erred in not sustaining their demurrer to petition of plaintiffs below, upon the ground that the cause of action was barred by the statute of limitations, and, further, that the petition failed to state a cause of action; and, further, the court erred in not rendering a judgment at the close of the case for defendants below.

The case at bar is not barred by the statute of limitations. No dispute or controversy arose regarding the interpretations of the reservation until in 1924, and that controversy was settled until later when plaintiffs below undertook to sell a part of their royalty interest in the land, and then the suit was filed in May, 1926, to quiet their title to their royalty interest.

In the case of Wilson v. Cox, 100 Okla. 300, 229 Pac. 267, first paragraph of syllabus, this court said:

"An exception in a deed, reserving to the grantor, his heirs and assigns, the oil, gas and mineral rights in and under the lands conveyed, together with the right of egress and ingress at all times to explore, prospect for, mine and remove such products in the usual way, reserves an interest in the fee in the grantor and is sufficient title to support an action to remove a cloud and quiet title to such estate."

And in the opinion at pages 301-302, this court said:

"The right of the owner of land to the oil, gas and other minerals beneath it, is a proper subject of sale and may be granted or reserved, and the exception in the deed from plaintiff to Rice reserved to the grantor an interest in the fee (Rich v. Doneghey, 71 Okla. 204, 177 Pac. 86; Barker v. Campbell-Ratcliff Land Co., 64 Okla. 249, 167 Pac. 468); and if the title, reserved in the plaintiff by virtue of such exception, was so clouded as to render it unsalable in the market, no reason is perceived why such cloud should not be removed by a court of equity."

The undisputed evidence shows that the deed to defendants was executed and delivered; that the reservation as to oil and gas produced from 60 acres was in the deed when executed and delivered; that an oil and gas lease was on the land when sold to defendants, which provided that lessors should have one-eighth part of all oil and casinghead gas saved from that produced from said lands: and to have $250 for gas from each gas well, where gas only was found; and $50 for gas produced and used off the premises from any oil well. Said lease expires April 4, 1921.

After the purchase of the property by defendants one rental was placed to the credit of plaintiffs in the bank by leaseholder, which was afterwards repaid by plaintiffs to defendants. No production was had under said lease. The land remained unleased for about three years; and then, in 1924, plaintiffs and defendants executed a new oil and gas lease on said lands. Dispute first arose as to the interpretation of the reservation in the deed upon the negotiations for the execution and sale of the oil and gas lease in 1924.

The evidence of plaintiff is, in substance, as follows:

George W. Hines, plaintiff below: Farmer, age 70 years; owned 190 acres in question;

234

desired to sell same and reserve the oil and gas produced from 60 acres thereof; that a lease was on the land; would not sell without reserving part of oil and gas on said lands; sold the lands to defendant Myers; reserved the oil and gas rights or royalty on the 60 acres in question; that defendant Myers was to have all oil and gas rights on the other 130 acres; that the deed was written up by Bob March, the abstractor, and that it was understood at the time of execution of deed that he (Hines) was reserving the oil and gas rights on 60 acres; that when rental placed in bank in his name he executed check for same to defendant Myers. When it came to executing new lease he first refused, as he (Hines) understood he was to receive the lease money. Later he and his wife executed the lease, his wife receiving $75 bonus money, with agreement with Myers that Myers to receive all bonus, and he, Hines, to have all the rest; and Myers agreed to sign for him whenever he sold his royalty and there would not be any more trouble. Next controversy arose when he (Hines) attempted to sell 20 acres of royalty, Myers refusing to sign for it. When Myers came to get new lease executed, he did not claim any royalty on the 60 acres, but claimed the bonus money.

Mrs. Martha Hines (wife of plaintiff): When signed new lease told Myers would not sign unless he would go 50-50 with the lease money. Myers said he could not do that, that he would not get anything but the lease money and that after it was fixed up he (Myers) would not get anything but the bonus money, and that he (Myers) intended to have it fixed up so her folks would get all of their royalty and that if anybody wanted to buy 10, 15, 20 acres he would fix it so they (Hines) would not have to bother him any more, and that after he got his bonus he would fix it so all of it would belong to them.

Ed McClelland testified, in substance: He was acquainted with all the times. Present when defendant Myers came to secure new oil and gas lease. Myers said that if they would sign it he would sign up for them whenever they got ready for the royalty on the 60 acres, and that if they sold their royalty on the 60 acres he (Myers) would sign up for them if they would sign the lease. Myers gave them $75 of the bonus money on the lease.

Oscar Hines, son of plaintiff below, testified, in substance: That he had a conversation with Myers after the execution of the oil lease, and that Myers and his wife admitted to him that they knew that his

father and mother were entitled to this royalty on the 60 acres, and that he was going to see that they got it. That his father and mother contracted to sell a part of the royalty and that he went to Myers to secure his o. k. on it and that Myers refused. That at that time his father was selling a one-half interest in the 60 acres.

Sam Hines, son of plaintiff below, testified, in substance: Saw defendant Myers when came to secure oil and gas lease from his father and mother in 1924. Myers stated to him:

"Sam, your father is kind of leaving it to you; they would sign it all right for you, and if you say for them to sign it, they will sign it. If they will sign the lease giving me the bonus money at the present time and that is all I will ever get, that is all I will ever want, and that is all I ever will get, and that is up to you whether they sign it or not"

—and Myers told his father:

"He said he could have all there was hereafter."

L. H. Myers, defendant below, testified, in substance: He purchased the lands from plaintiff Hines; understood Hines was reserving one-eighth of the oil and gas on 60 acres. There was an oil and gas lease on the land at the time. When the deed was made it was discussed whether to give back a royalty deed or certify in the deed regarding it; finally decided be best for it to go in the deed. First positive information he had that Hines claimed his interest different from what it recites in deed was when he went to him to sign a new lease about two years before the trial of the case. One rental under old lease placed to Hines' credit in bank and had bank secure check to him for this money from Hines. Land remained unleased from expiration of old lease for three years until question of new lease came up, in 1924. When he went to Hines to secure execution of new lease Hines first told him "We cannot sign it." Finally said, "We will sign that if you will give us half of the bonus money"; that he (Myers) told him, "I am entitled to the bonus money and you are to have one-eighth of the oil and gas"; that Hines asked him, "What are you going to charge us now if you have to sign the other for us," and he (Myers) said, "Uncle George, as far as I am concerned, I won't charge you anything if I have to sign that for your part of the interest, I won't charge you anything"; that he always said they had an one-eighth interest in the oil and gas; that he was a farmer and did not know much about the oil business or anything like that.

The defendant Myers was asked by the court:

"Q. Suppose you drill a well on the place yourself, how much would Mr. Hines get then? A. I figures he would get an undivided one-eighth interest."

That he did not remember telling McClelland if they (Hines) would sign the lease in 1924, they were to have all of the royalty whenever they wanted it and he would sign a waiver for them. He denied that he told the Hines boy that if his father and mother would sign the lease he would get the bonus and that was all he would ever get and they were to get the royalty.

George W. Yeager testified, in substance: He was the real estate agent that made the sale of the land. He could not say whether Hines was reserving all of the royalty on 60 acres or not, but he was to reserve some oil right.

A review of the entire record of the oral evidence and the reservation in the deed clearly shows that the plaintiffs below were reserving one-eighth of the oil and gas, free of cost to them, thereafter produced from said lands. That they did not claim the bonus money for the lease or delay rentals on leases.

In the case of Dill v. Rockwell, 94 Okla. 25, 220 Pac. 620, first paragraph of syllabus, this court said:

"A reservation of the oil and gas rights in the deed to the property conveyed is valid and entitles the grantor, when oil or gas is produced, to the oil and gas rights so reserved."

In the case of Dunlap v. Jackson, 92 Okla. 246, 219 Pac. 314, this court went into the question involved in the case at bar, and reviewed the authorities from the various oil producing states which had passed on the questions of reservations in the oil and gas right under the surface, and, after a thorough review of the authorities from the different states, came to the conclusion that such reservations contained in deeds were valid, and that whenever oil and gas was produced and reduced to possession, the grantor is entitled to whatever part of the oil and gas he reserved in his deed.

In an action or proceeding for equitable relief, a general finding by the trial court, upon conflicting and irreconcilable evidence, will not be disturbed by this court upon an appeal, unless the same is against the clear weight of the evidence. Flynn v. Vanderslice's Estate, 134 Okla. 156, 273 Pac. 213; Houston v. McCrory, 140 Okla. 21, 282 Pac. 149; Richardson v. Gregg, 144 Okla. 102, 290 Pac. 190.

The evidence in the case at bar clearly shows that the plaintiffs below reserved one-eighth of the oil and gas to be thereafter produced from the lands in question. The judgment of the trial court was not against the clear weight of the evidence.

Judgment is affirmed.

RILEY, HEFNER, CULLISON, SWINDALL, ANDREWS, McNEILL, and KORNEGAY, JJ., concur. LESTER, C. J., absent.