W. C. HALLER, Oklahoma County Superintendent of Schools, Plaintiff in Error,

v.

Allen M. AUSTIN and James R. Parker, on behalf of themselves and all others similarly situated, Defendants in Error.

No. 45028.

Supreme Court of Oklahoma.

Aug. 3, 1971.

As Amended on Denial of Rehearing Aug. 25, 1971.

Curtis P. Harris, Dist. Atty., W. L. Funk, Asst. Dist. Atty., and Harry Johnson, Oklahoma City, for plaintiff in error.

Miller, Brockett, Granger & McConnel by Barney W. Miller, Oklahoma City, for defendant in error.

JACKSON, Justice:

70 O.S.Supp.1968, § 7–1, provides that a petition for annexation of a portion of a school district to another school district must be signed "by a majority of the school district electors in the territory proposed to be annexed."

A "school district elector" is defined in 70 O.S.Supp.1965, § 1–15, as a person—

"who has resided in the district for at least twenty days and who possesses the qualifications of electors as defined by the Constitution and Laws of the State. All persons shall be required to be registered with the County Election Board of the county in which such person resides in order to vote in any school or school district election."

On April 5, 1971, Austin and Parker presented to W. C. Haller, Oklahoma County Superintendent of Schools, a petition for the annexation of a portion of Independent School District No. 53 of Oklahoma County (known as Crooked Oak School District)

to Independent School Dist. No. 52 of Oklahoma County (known as Midwest City School District). It is admitted that this petition for annexation contained 1047 valid signatures. County Superintendent, Haller, ascertained from the County Election Board that there were 2309 registered voters in the area proposed to be annexed and refused to call an annexation election.

Austin and Parker, for themselves and others as plaintiffs, filed an action in the District Court of Oklahoma County against County Superintendent Haller requesting the court to overrule the order denying the Petition for Annexation and to direct the County Superintendent of Schools to call an annexation election pursuant to their Petition for Annexation. After an evidentiary hearing the trial court found that 272 registered voters in the area proposed to be annexed had moved out of the area and should not be considered in testing the sufficiency of the Petition.

The trial court then subtracted 272 (those who had moved) from 2309 (the number registered) and concluded that 1047 petitioners constituted a majority of the remaining 2037 qualified registered electors remaining in the area sought to be annexed and entered judgment directing the County Superintendent of Schools, Haller, to call an annexation election.

A Petition in Error and a Motion to stay the Election were filed in this court on June 21, 1971. On June 28, 1971, we entered an order refusing to stay the election but stayed the effectiveness of the election until the further order of the court.

The parties have stipulated that the evidence supports the trial court's finding that 272 registered voters had moved out of the area proposed to be annexed. However, County Superintendent Haller, defendant in the trial court and plaintiff in error here, contends that the burden was upon the plaintiffs in the trial court, Austin and Parker, to produce evidence that the 272 electors had left the area permanently and were not intending to return. He correctly states that there is no evidence that any of the 272 registered voters had abandoned their legal residences in the area, or had established any new residence or domicile outside the affected area. He relies upon the presumption that once a residence is established it continues until a new one is established.

In school annexation *election contests* we have held that an individual must have a residence somewhere, "and when once established, it is presumed to continue until a new one is established." Jones v. Burkett (1959), Okl., 346 P.2d 338; Richardson v. Gregg, 144 Okl. 102, 290 P. 190. In the Jones and Richardson cases the presumption was indulged in favor of electors whose right to vote was contested when they appeared at the election to cast their ballots. In those cases they proved their right to vote in election contests following the elections.

In the instant case the 272 absentees were not attempting to cast their ballots, or exercise or assert a right of suffrage. The issue when the Petition was circulated was whether an election would be called. Since the law does not require notice that a petition will be circulated we may assume that the 272 absentees were not aware that a petition to call an election was being circulated. It would seem if registered absentees are to be regarded as district electors so as to have an in-influence upon whether an election will be called the Legislature would have provided some form of notice that a petition will be circulated. Notice is required before an annexation election can be held. 70 O.S.Supp.1968, § 7-1(a).

A petition for an election is simply the machinery or method used to place the question before the electors as to whether annexation will be approved. The election call decides nothing, except that an election will be held. The presumption indulged and applied in Jones and Richardson is a rebuttable presumption in favor of suffrage for the voter who is attempting to vote at an election. We do not believe it should be applied, or that the Legislature intended

**1362**

that it should be applied, in determining whether a petition for annexation is sufficient.

It is argued that a valid and sufficient petition is a jurisdictional prerequisite to an order calling an annexation election. We have so held, but we have also held that the court may include a review of the whole record and consider any proper evidence supporting or challenging the sufficiency of the petition. In re Wickstrum (1969), Okl., 454 P.2d 660, 663.

The County Superintendent suggests that the voter registration records of Oklahoma County cannot be collaterally attacked. The "registration records" are not under attack in this case. They were accepted and approved by the County Superintendent and the trial court. The sufficiency of the petition is in question, and in In re Wickstrum we said (p. 663) that a judicial determination of the sufficiency of the petition is an evidentiary proceeding.

We conclude that the trial court did not err in directing that an annexation election be held.

Our attention is invited to House Joint Resolution No. 1019, approved April 13, 1971, suspending all laws of this state authorizing the holding of elections to vote on questions of annexation until July 1, 1971. It is not contended that this resolution is applicable in this case. Section 1 of the Resolution provides "that this suspension shall not apply to any proceedings which have been initiated, but not completed prior to the effective date of this Resolution." The petition for annexation herein was filed with the County Superintendent of Schools on April 5, 1971. The new Oklahoma School Code became effective on July 2, 1971. H.B. No. 1155, Section 24–128, enacted 1971.

Our order dated June 28, 1971, staying the effectiveness of the election is vacated and set aside, without prejudice to the right of an appeal in the manner provided by law, to the District Court from an order of the County Superintendent of Schools

declaring the result of the annexation election.

The order of the Trial Court directing the County Superintendent of Schools to call an election is affirmed.

BERRY, C. J., DAVISON, V. C. J., and WILLIAMS, IRWIN, LAVENDER and McINERNEY, JJ., concur.