Howard H. **HENDRICK**, Petitioner,

v.

David Lee **WALTERS**, Respondent.

No. 82533.

Supreme Court of Oklahoma.

Dec. 16, 1993.

Lana Jeanne Tyree, Cartwright & Tyree, Floyd Taylor, Susan Manchester, Taylor and Manchester, Oklahoma City, for petitioner.

Burck Bailey, Warren F. Bickford, Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, for respondent.

OPALA, Justice.

█ The single issue of which we take original cognizance [1] is whether the Governor has forfeited his office by failure to take an oath in the form prescribed by the provisions of 51 O.S.1961 § 2 [§ 2 or the statutory

---

1. Today's opinion is in conformity with this court's order of November 18, 1993, which provides:

*ORDER AND RULING PENDING PROMULGATION OF OPINION*
On consideration of the paperwork on file and of the arguments presented orally on November 17, 1993, the court effects the disposition set forth below:
 (1) it assumes original cognizance to decide the issue whether public office holders are required by law to take an oath in the form prescribed by 51 O.S.1991 § 2;
 (2) the *sole* question of which the court takes cognizance is answered that the oath prescribed by 51 O.S.1991 § 2 was superseded by the passage of State Question No. 466, Legislative Referendum No. 178, adopted by the people on September 9, 1969, Art. XV, Sec. 1, Okl. Const.;
 (3) the court's formal opinion will follow; the parties shall have twenty (20) days from the day that opinion is handed down to seek rehearing of the court's pronouncement.
DONE BY THE SUPREME COURT IN CONFERENCE THIS 18TH DAY OF NOVEMBER, 1993.
 /s/ Ralph B. Hodges, Chief Justice
HODGES, C.J., LAVENDER, V.C.J., SIMMS, HARGRAVE, OPALA, WILSON, KAUGER, SUMMERS, JJ., CONCUR; WATT, J., DISQUALIFIED.

oath].[2] We pronounce that the passage of State Question No. 466, Legislative Referendum No. 178, adopted by the people on September 9, 1969, Art. XV, § 1, Okl. Const. [the constitutional oath], effected a repeal by substitution of the statutory oath.[3] *No public official* is hence required to take an oath in that form *to qualify for office* and no *vacancy* stands created by a public official's failure to file a § 2 oath.[4] We conclude that the Governor has *not* forfeited his office.[5]

## I.

## THE COURT'S ASSUMPTION OF ORIGINAL COGNIZANCE FOR CONSIDERATION OF A SINGLE ISSUE

Petitioner Howard Hendrick [Petitioner or the Senator] tenders a public-law controversy the resolution of which will determine the legitimacy of the governor's incumbency and settle the issue whether public officials are required to take an oath in the form prescribed by the provisions of 51 O.S.1961 § 2.

Generally, forfeiture of office may be pressed in a civil action which does not depend upon any particular remedial variant and can be accommodated by *judicial determination*[6] *within the framework of any suitable rubric.*[7] *Since a forfeiture cannot be remitted by the Legislature, a judicial declaration of whether one has occurred is imperative.* Art. V, § 46, Okl. Const.[8] We

---

2. The terms of 51 O.S.1961 § 2 provided in pertinent part:

 "Every state ... officer under the laws of the State ... shall, *before entering upon the duties of his office,* take and subscribe to the following oath or affirmations:
 I, [blank], do solemnly swear (or affirm) that I will support, obey, and defend the constitution of the United States, and the constitution of the State of Oklahoma, and will discharge the duties of my office with fidelity; that I have not paid, or contributed, either directly or indirectly, any money or other valuable thing, to procure my nomination or election (or appointment), except for necessary and proper expenses expressly authorized by law; that I have not, knowingly, violated any election law of the State, or procured it to be done by others in my behalf; that I will not, knowingly, receive, directly or indirectly, any money or other valuable thing, for the performance or non-performance of any act or duty pertaining to my office, other than the compensation allowed by law, and I further swear (or affirm) that I will not receive, use or travel upon any free pass or on free transportation during my term of office." [Emphasis supplied.]

3. The official § 2 version of 1961 vintage is that section's last *effective* inclusion in *any* decennial compilation. Upon the adoption of the 1969 amendment of Art. XV, § 1, the § 2 oath became *functus officio* and has continued in that state for want of an *intended legislative transformation* into a mandatory supplemental statutory oath. *Functus officio* is a term applied to denote something that once has had life and power, but has become of no effect whatsoever. *Morrow v. Board of Directors of Imperial Irr. Dist.,* 219 Cal. 246, 26 P.2d 292 (1933). Although § 2 has not been excised from the *later* decennial compilations, its incorporation into the subsequent statutory collections did *not* impart the *force of law* to that section because its text *fails to conform to*

*Art. XV, § 1, Okl. Const.* For a full explanation of our analysis on this point, *see* Part IV.

4. The terms of 51 O.S.1991 § 3.1 provide in pertinent part:

 "When any person elected to a public office has ... *failed to qualify* and enter upon the duties of such office for any reason or cause at the time and in the manner provided by law, and for six (6) months or more thereafter has *not qualified* and entered upon the duties of said office, *such public office shall be deemed vacant* and shall be filled by the officer or board authorized to fill such vacancy.... The person holding over in such office shall surrender the same to the person so appointed upon his qualifying for said office as provided by law...." [Emphasis supplied.]

5. Because we answer the question in the negative—concluding as we do that an oath in the form prescribed by the provisions of 51 O.S.1961 § 2 is not required of public officials—we need not concern ourselves with the point in time when the forfeiture would have occurred. *See* in this connection the discussion of the relation-back doctrine in the common law of forfeiture in *U.S. v. 92 Buena Vista Ave., Rumson, N.J.,* —— U.S. ——, ——, 113 S.Ct. 1126, 1135, 122 L.Ed.2d 469 (1993) and *Woods v. City of Lawton,* Okl., 845 P.2d 880, 886–887 (1993) (Summers, J., dissenting).

6. *State v. Freeman,* 440 P.2d 744, 749 (1968).

7. *Moore v. Brett,* 193 Okl. 627, 137 P.2d 539, 540–541 (1943).

8. The pertinent terms of Art. 5, § 46, Okl. Const. provide:

 "The legislature shall not, except as otherwise provided in this Constitution, pass any local or special law ...
 Remitting ... forfeitures...."

have chosen the method most effective procedurally, isolating for consideration and decision a single issue which—although not in the precise form advanced by Petitioner—is dispositive of this public-law controversy and will put to rest any concerns articulated by the parties.[9] We hence take today original cognizance of this justiciable controversy in which no other court can afford speedy and adequate relief.[10]

## II.

### PETITIONER, A STATE SENATOR, HAS STANDING TO TENDER THE ISSUE UNDER CONSIDERATION

■ Respondent challenges Petitioner's *standing* to bring the tendered issue.[11]

Standing refers to a person's legal right to seek relief in a judicial forum.[12] *It may be raised as an issue at any stage of the judicial process by any party or by the court sua sponte.*[13]

■ When a member of the law-making assembly initiates legal proceedings *in a representational capacity* as a senator or a member of the House of Representatives, that legislator can claim no elevated status in establishing standing. The lawmaker must meet the same threshold criteria [14] required of any other litigant.[15] An initial inquiry must reveal that (1) an actual or threatened injury (sometimes called injury-in-fact) has occurred, (2) some relief for the harm can be

9. Our forfeiture analysis depends, not upon whether Respondent has been convicted of an offense which would disqualify him from holding office, but rather upon our construction of the state constitution's oath in Art. XV, § 1 and its forfeiture provision in Art. XV, § 2 as well as upon whether the text of § 2 (51 O.S.1961) has been transformed into a mandatory supplemental oath.

10. Art. VII, § 4, Okl. Const.; *Ethics Commission v. Cullison*, Okl., 850 P.2d 1069, 1083 (1993) (Opala J., concurring in result).

11. Today's declaration of rights requires a different standing analysis from that of an action in *quo warranto*. *See* 12 O.S.1991 § 1533. *Quo warranto* requires the attorney general, district attorney, or a contestant for the office to challenge the incumbent's title, presupposing (a) the incumbent is a usurper and (b) another has legal title to the office in question. *See State ex rel. Haskell v. Huston*, 21 Okl. 782, 97 P. 982 (1908); *Garrett v. London*, 107 Okl. 72, 229 P. 1074 (1924); *Frittz ex rel. State v. Thorpe*, 149 Okl. 219, 299 P. 884 (1931). In this original action Respondent is, without a doubt, legitimately in office *vis-à-vis any other office-seeker;* the office is alleged to stand vacant by forfeiture for failure to take a required oath.

12. *State ex rel. Cartwright v. Okl. Tax Com'n*, Okl., 653 P.2d 1230, 1232 (1982); *Matter of Adoption of Baby Boy D*, Okl., 742 P.2d 1059, 1062 (1987).

13. *Matter of Estate of Doan*, Okl., 727 P.2d 574, 576 n. 3 (1986).

14. Since our standing standards are analogous to those pronounced by the United States Supreme Court, the latter's jurisprudence is instructive. A litigant must overcome two threshold hurdles: *"constitutional limitations* of federal courts' jurisdiction and *prudential limitations* on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). [Emphasis supplied.] The *constitutional* aspect of standing is "whether the plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art. III." *Warth, supra,* 422 U.S. at 498, 95 S.Ct. at 2205; *Singleton v. Wulff*, 428 U.S. 106, 112, 96 S.Ct. 2868, 2873, 49 L.Ed.2d 826 (1976). "[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant ... and that the injury 'fairly can be traced to the challenged action' and 'is likely to be redressed by a favorable decision....' " *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982), quoting from *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 41, 96 S.Ct. 1917, 1924, 1925, 48 L.Ed.2d 450 (1976).

The prudential prong of standing addresses itself to the self-restraint by which federal courts limit their jurisdiction. Generally, the plaintiff can only assert that his *own interests and legal rights* have been injured, and *not* those of third parties. *Valley Forge, supra,* 454 U.S. at 474, 102 S.Ct. at 760; *Warth, supra,* 422 U.S. at 500–501, 95 S.Ct. at 2205.

15. *See Harrington v. Bush*, 553 F.2d 190, 204 (D.C.Cir.1977).

given, and (3) the interest to be guarded is within a statutorily or constitutionally protected zone.[16] Not only is standing confined to those whose interest in the controversy is "direct, immediate and substantial",[17] a litigant must also have a personal stake in the outcome.[18]

Legislative process requires a substantial quantum of *interaction* by governor with legislator, whether the latter is a senator or a member of the House of Representatives.

Our Constitution gives to a governor the duty (a) to call the Legislature into special session and specify the subject to be acted upon,[19] (b) to approve or to veto an enrolled bill,[20] (c) to approve or disapprove appropriations,[21] (d) to communicate to the Legislature the condition of the State,[22] and (e) to make appointments,[23] some of which require Senate confirmation.[24] Governor and legislators are also linked by the former's adjournment powers[25] and by shared pardon and parole

**16.** *Independent School Dist. No. 9 v. Glass*, Okl., 639 P.2d 1233, 1237 (1982).

**17.** *Underside v. Lathrop*, Okl., 645 P.2d 514, 517 (1982); *Democratic Party of Oklahoma v. Estep*, Okl., 652 P.2d 271, 274 n. 13 (1982); *Doan, supra* note 13 at 576.

**18.** *Independent School Dist. No. 9 v. Glass, supra* note 16 at 1237.

**19.** Art. VI, § 7, Okl. Const., provides:

The Governor shall have the power to convoke the Legislature, or the Senate only, on extraordinary occasions. At extraordinary sessions, no subject shall be acted upon, except such as the Governor may recommend for consideration.

**20.** Art. VI, § 11, Okl. Const., provides in pertinent part:

Every bill which shall have passed the Senate and House of Representatives, and every resolution requiring the assent of both branches of the Legislature, shall, before it becomes a law, be presented to the Governor; if he *approve,* he shall sign it; if not, he shall return it with his objections to the house in which it shall have originated, who shall enter the objections at large in the Journal and proceed to reconsider it. If, after such reconsideration, two-thirds of the members elected to that house shall agree to pass the bill or joint resolution, it shall be sent, together with the objections, to the other house, by which it shall likewise be reconsidered; and, if approved by two-thirds of the members elected to that house, *it shall become a law, notwithstanding the objections of the Governor.* [Emphasis supplied.]

**21.** Art. VI, § 12, Okl. Const., provides:

Every bill passed by the *Legislature,* making appropriations of money embracing distinct items, shall, before it becomes a law, be presented to the *Governor;* if he disapproves the bill, or any item, or appropriation therein contained, he shall communicate such disapproval, with his reasons therefor, to the house in

which the bill shall have originated, but all items not disapproved shall have the force and effect of law according to the original provisions of the bill. Any item or items so disapproved shall be void, unless repassed by a two-thirds vote, according to the rules and limitations prescribed in the preceding section in reference to other bills: Provided, That this section shall not relieve emergency bills of the requirement of the three-fourths vote. [Emphasis supplied.]

**22.** Art. VI, § 9, Okl. Const., provides:

At every session of the Legislature, and immediately upon its organization, the Governor shall communicate by message, delivered to a joint session of the two Houses, upon the condition of the State; and shall recommend such matters to the Legislature as he shall judge expedient. He shall also transmit a copy, to each house, of the full report of each State officer and State commission. He shall communicate, from time to time, such matters as he may elect or the Legislature may require.

**23.** Art. VI, § 13, Okl. Const., provides:

The Governor shall commission all officers not otherwise commissioned by law.... When any office shall become vacant, he shall, unless otherwise provided by law, appoint a person to fill such vacancy, who shall continue in office until a successor shall have been duly elected or appointed, and qualified according to law.

**24.** *See, e.g.,* 69 O.S.1991 § 302(b), which provides that the members of the State Highway Commission shall be appointed by the Governor, "by and with the consent of the Senate"; 74 O.S.1991 § 10.3 B., creating a cabinet system for the executive branch of state government and providing that the Governor shall appoint, "with the advice and consent of the Senate," a Secretary to head each cabinet area.

**25.** Art. VI, § 14, Okl. Const., provides in pertinent part:

In case of a disagreement between the two houses of the Legislature, at a regular or spe-

responsibilities.[26] The Senator's interacting contacts vis-à-vis the Governor include (a) giving and receiving constitutionally mandated communications, (b) confirming or refusing to confirm the Governor's appointees, (c) serving on appropriations and other committees, (d) voting on bills and (e) overriding vetoes. Whether the Senator's vote in the confirmation process or to override the Governor's veto is an exercise of futility or an effective governmental act depends upon the outcome of today's controversy.[27] If the office is indeed vacant by forfeiture upon Respondent's failure to take an oath in the form prescribed by 51 O.S.1961 § 2, then the Senator's confirmation votes would be invited, and indeed cast, to place an imprimatur upon invalid appointments; and his vote to override the Governor's veto would be in vain. The Senator clearly has shown *both* a plain, direct and legitimate interest in having this court's declaration upon the tendered issue *and* a personal stake in the outcome.[28] The controversy is lively, real and the requirement of justiciability hence clearly met.[29]

## III.

### ART. XV, § 2'S FORFEITURE–OF–OFFICE CLAUSE TARGETS SOLELY FAILURE TO TAKE THE CONSTITUTIONAL OATH REQUIRED OF ALL PUBLIC OFFICERS

 The Oklahoma Constitution, this state's highest law to which all statutes must yield, must be so construed as to give effect to the intent of its framers and of the people adopting it.[30] When a *declaration of forfeiture* is sought, the general principles of constitutional and statutory construction may be applied. The court must be *mindful of this*

---

cial session, with respect to the time of adjournment, the Governor may ... adjourn them to such time as he shall deem proper, not beyond the day of the next stated meeting of the Legislature. He may *convoke* the Legislature at or *adjourn it to another place*, when, in his opinion, the public safety or welfare, or the safety or health of the members require it: Provided, however, That such change or adjournment shall be *concurred in by a two-thirds vote of all the members elected to each branch of the Legislature.*

**26.** *See* Art. VI, § 10, Okl. Const., which provides that the Governor must "communicate to the Legislature, at each regular session, each case of reprieve, commutation, parole or pardon, granted...."

**27.** The United States Supreme Court has held that state legislators have a *"plain, direct and adequate interest in maintaining the effectiveness of their votes"* which gives them standing to challenge the constitutionality of a lieutenant governor's tie-breaking vote. *Coleman v. Miller,* 307 U.S. 433, 438, 59 S.Ct. 972, 975, 83 L.Ed. 1385 (1939). *See also Kennedy v. Sampson,* 511 F.2d 430, 433 (D.C.Cir.1974) (a U.S. Senator has standing to challenge the President's use of the pocket veto); *Risser v. Thompson,* 930 F.2d 549, 550–551 (7th Cir.1991) (state legislators have standing to challenge the governor's partial veto power); *Clarke v. United States,* 705 F.Supp. 605, 608 (D.D.C.1988) (District of Columbia city councilmen have standing to challenge a law that violates their First Amendment right to vote); *Dennis v. Luis,* 741 F.2d 628, 630–31 (3d Cir. 1984) (territorial legislators have standing to challenge a gubernatorial appointment of a *temporary* commissioner—after their refusal to confirm· him as a *permanent* appointee—on the grounds that they were being denied the right to advise and consent).

**28.** One commentator categorizes the injuries which may be suffered by legislators as (1) diluted vote, (2) usurpation of legislative power, and (3) *diminished effectiveness in carrying out legislative duties absent a judicial declaration.* Benck, STANDING FOR STATE AND FEDERAL LEGISLATORS, 23 SANTA CLARA L.REV. 811, 821 (1983). Another authority theorizes a legislator has standing "(1) as an advocate of traditional individual interest that happens to be connected with legislative activities; (2) as a representative of his or her constituents; (3) as an officially designated representative of a legislative body, typically challenging allegedly unlawful executive action; or (4) *as a vindicator of his or her alleged personal interest in full exercise of official legislative powers.*" [Emphasis supplied.] L. Tribe, AMERICAN CONSTITUTIONAL LAW § 3–20 (2d Ed.1988).

**29.** *Application of State ex rel. Dept. of Transp.,* Okl., 646 P.2d 605, 609 (1982).

**30.** *Draper v. State,* Okl., 621 P.2d 1142, 1145 (1980).

state's strong statutory policy (as well as that of the surviving common law) which disfavors both private-[31] and public-law[32] forfeitures. Courts will neither search for a construction that will bring about a forfeiture,[33] nor adopt a meaning which would produce that effect, unless the language of the statute or constitutional provision under consideration—giving due respect to its purpose and to extant circumstances—clearly demonstrates the legislature intended that a forfeiture take place.[34]

■ The oath prescribed by Art. XV, § 1, Okl. Const. [the constitutional oath], which *all public officers* must take before entering upon their duties of office, provides:

*All public officers,* before entering upon the duties of their offices, shall take and subscribe to the following oath or affirmation:

I, [blank], do solemnly swear (or affirm) that I will support, obey, and defend the Constitution of the United States, and the Constitution of the State of Oklahoma, and that I will not, knowingly, receive, directly or indirectly, any money or other valuable thing, for the performance or nonperformance of any act or duty pertaining to my office, other than the compensation allowed by law; I further swear (or affirm) that I will faithfully discharge my duties as [blank] to the best of my ability.

The Legislature may prescribe further oaths or affirmations. [Emphasis supplied.]

The forfeiture clause in Art. XV, § 2, Okl. Const., provides in pertinent part:

"The *foregoing* oath shall be administered by some person authorized to administer oaths, and in the case of State officers and judges of the Supreme Court, shall be filed in the office of the Secretary of State . . . any person refusing to take *said oath, or affirmation,* shall forfeit his office, and any person who shall have been convicted of having sworn or affirmed falsely, or having violated *said oath, or affirmation,* shall be guilty of perjury, and shall be disqualified from holding any office of trust or profit within the State. . . ."

*This provision unmistakably refers to the constitutional oath in Art. XV, § 1. It targets solely the failure to take that oath.* Although Art. XV, § 1, permits the Legislature to prescribe other oaths or affirmations, we *cannot* infer from the constitution's *forfeiture clause* that failure to take *some statutory oath* would similarly result in forfeiture of office. We hence hold that, even if we were to conclude today that the text of the § 2 (51 O.S.) oath does remain viable as a legislatively transformed mandatory supplemental oath, Art. XV, § 2 targets solely an official's failure to take the constitutional oath.

---

**31.** The terms of 23 O.S.1991 § 2 express this state's *strong policy against forfeitures of any kind. Stewart v. Amerada Hess Corp.,* Okl., 604 P.2d 854, 858 (1980). Section 2 provides in pertinent part:

Whenever, by the terms of an obligation, a party thereto *incurs a forfeiture,* or a loss in the nature of a forfeiture, by reason of his failure to comply with its provision, *he may be relieved therefrom,* upon making full compensation to the other party, except in case of a grossly negligent, willful or fraudulent breach of duty. [Emphasis supplied.]

**32.** Statutes which call for *forfeiture of an incumbent's official position* are *penal* and must be *strictly construed. Austin v. United States,* —— U.S. ——, ——, 113 S.Ct. 2801, 2810, 125

L.Ed.2d 488 (1993); *State v. Viner,* 119 Ohio St. 303, 164 N.E. 119, 120 (1928); *State ex inf. Taylor v. Cumpton,* 362 Mo. 199, 240 S.W.2d 877, 886 (1951). In *Austin* the Court states that "forfeiture generally and statutory *in rem* forfeiture in particular historically have been understood, at least in part, as punishment." [Emphasis in original.]

**33.** *Grooms v. Thomas,* 93 Okl. 87, 219 P. 700, 701 (1923); *1942 Chevrolet Automobile Motor No. BA–193397 v. State,* 191 Okl. 26, 128 P.2d 448, 449 (1942).

**34.** *State v. Bird,* 62 Mont. 408, 205 P. 241, 242 (1922).

## IV.

### PUBLIC OFFICIALS ARE NOT RE-QUIRED TO TAKE THE OATH PRE-SCRIBED BY 51 O.S.1961 § 2.

#### A.

### PASSAGE OF THE CONSTITUTIONAL OATH IN 1969 EFFECTED A RE-PEAL BY SUBSTITUTION OF THE § 2 OATH IN ITS THEN–EXISTING FORM

According to Petitioner, the Governor is (a) required to take an oath in the form prescribed by § 2, (b) his failure to do so has resulted in forfeiture of office and (c) the Lieutenant Governor has succeeded him.[35]

The pre–1969 oath regime consisted of (1) the Art. XV, § 1 oath [the first-generation oath],[36] required of senators, representatives, judicial, state and county officers, and (2) a carbon-copy oath (now found in § 2), enacted in 1910, to be taken by "every state, county, township, city, town, school district, or other officer under the laws of the State, and every deputy or assistant of any such officer." *The Legislative history of 51 O.S.1961 § 2 shows that (1) it was cast to be in conformity with the first-generation oath and (2) was passed*

*to eliminate the need to repeat that oath or make reference to it with respect to each public office.*[37]

 A time-honored rule teaches that a revising statute (or, as in this case, a constitutional amendment) takes the place of all the former laws existing upon the subject with which it deals.[38] This is true even though it contains no express words to that effect.[39] In the strictest sense this process is not repeal by implication. Rather, it rests upon the principle that when it is apparent from the framework of the revision that whatever is embraced in the new law shall control and whatever is excluded is discarded, decisive evidence exists of an intention to prescribe the latest provisions as the only ones on that subject which shall be obligatory.[40]

The ballot title of the 1969 amendment provides:

"Shall a Constitutional Amendment providing for *the form of oath of office* to be taken and subscribed to by *all public officers of Oklahoma,* be approved by the people ..."

*The manifest intent of the 1969 amendment was to provide one mandatory constitutional oath for all public officers in a newly prescribed form.*[41] The people's grant of authority for the Legislature to *add new oaths* is a strong indication that, in addition to providing the one form of oath, the law-

---

**35.** The provisions of Art. VI, § 16, Okl. Const. are:

> In case of impeachment of the Governor, or of his death, *failure to qualify*, resignation, removal from the State, or inability to discharge the powers and duties of the office, the said office, with its compensation, shall *devolve upon the Lieutenant Governor* for the residue of the term or until the disability shall be removed. [Emphasis supplied.]

**36.** From our Constitution's very birth until its amendment in 1969, Art. XV, Sec. 1, Okl. Const, prescribed what we refer to as the *first-generation oath.*

**37.** *See* Legislative History, R.L.1910 § 4270.

**38.** *Lankford v. Menefee,* 45 Okl. 228, 145 P. 375, 376–377 (1914); *Chickasha Nat. Bank v. Cloud,* 40 Okl. 623, 139 P. 1134, 1135 (1914). *See also Mack v. Jastro,* 126 Cal. 130, 58 P. 372, 373

(1899); *Sponogle v. Curnow,* 136 Cal. 580, 69 P. 255, 256–257 (1902).

**39.** *Lankford, supra* note 38, 145 P. at 376.

**40.** *Lankford, supra* note 38, 145 P. at 376; *Mack, supra* note 38, 58 P. at 373.

**41.** Illustrative of the Legislature's intent to abrogate the oath in the form prescribed by the provisions of 51 O.S.1961 § 2 and *replace it with new language* is the resolution passed by both houses, Engrossed Senate Joint Resolution No. 17, by Short and Garrison of the Senate and Taggart, Peterson, Connor, Hunter, Green and Thompson of the House, which provides:

> A JOINT RESOLUTION DIRECTING THE SECRETARY OF STATE TO REFER TO THE PEOPLE FOR THEIR APPROVAL OR REJECTION A PROPOSED AMENDMENT OF SECTION 1 OF ARTICLE XV, OF THE CONSTITUTION OF THE STATE OF OKLAHOMA;

makers' amendment was intended to (1) eliminate all non-conforming oaths—including *not only* the text of the constitution's first-generation oath *but also* that of its mirror-image in 51 O.S.1961 § 2, and (2) allow the lawmakers to decide what, if any, other supplemental oaths would be mandated.

## B.

### NO INDICIA OF LEGISLATIVE INTENT TO TRANSFORM 51 O.S.1961 § 2 INTO A MANDATORY SUPPLEMENTAL OATH ARE PRESENT

PROVIDING FOR OATH OF OFFICE FOR ALL PUBLIC OFFICERS; PROVIDING FOR A BALLOT TITLE; AND ORDERING A SPECIAL ELECTION. BE IT RESOLVED BY THE SENATE AND THE HOUSE OF REPRESENTATIVES OF THE FIRST SESSION OF THE THIRTY–SECOND LEGISLATURE OF THE STATE OF OKLAHOMA:

SECTION 1. The Secretary of State shall refer to the people for their approval or rejection, as and in the manner provided by law, the following proposed amendment of Section 1 of Article XV, of the Constitution of the State of Oklahoma:

Section 1. ~~Senators and Representatives, and all Judicial, State, and County~~ All public officers ~~shall~~, before entering upon the duties of their ~~respective~~ offices, shall take and subscribe to the following oath or affirmation:

"I, . . . . . . . . . . . . . . ., do solemnly swear (or affirm) that I will support, obey, and defend the Constitution of the United States, and the Constitution of the State of Oklahoma, and ~~will discharge the duties of my office with fidelity; that I have not paid, or contributed, either directly or indirectly, any money or other valuable thing, to procure my nomination or election (or appointment), except for necessary and proper expenses expressly authorized by law; that I have not, knowingly, violated any election law of the State, or procured it to be done by others in my behalf;~~ that I will not, knowingly, receive, directly or indirectly, any money or other valuable thing, for the performance or nonperformance of any act or duty pertaining to my office, other than the compensation allowed by law~~;~~ ~~and~~ I further swear (or affirm) that I will ~~not receive, use, or travel upon any free pass or on free transportation during my term of office~~ faithfully discharge my duties as . . . . . . . . . . . . . . to the best of my ability." The Legislature may prescribe further oaths or affirmations.

SECTION 2. The ballot title for the proposed constitutional amendment set forth in Section 1 of this resolution shall be in the following form:

Petitioner urges that since the § 2 oath was carried forward into each decennial compilation following the constitutional change, an oath in the form prescribed by § 2 before the Constitution's amendment in 1969 is a mandatory oath—supplemental to the constitutional oath—which every public officer *must take.*

 Under the constitutional mandate in Art. V, § 43, Okl. Const.,[42] the Legislature must revise Oklahoma laws every ten years. While a statute's incorporation in a decennial compilation *purges or cures any procedural*

BALLOT TITLE

Legislative Referendum No. _____ State Question No. _____

THE GIST OF THE PROPOSITION IS AS FOLLOWS:

Shall a Constitutional Amendment providing for the form of oath of office to be taken and subscribed to by all public officers of Oklahoma, be approved by the people?

SHALL THE PROPOSED AMENDMENT BE APPROVED?

/_____ / YES
/_____ / NO

SECTION 3. The President Pro Tempore of the Senate shall, immediately after the adoption of this resolution, prepare and file one copy thereof, including the ballot title, with the Secretary of State and one copy with the Attorney General of the State of Oklahoma.

SECTION 4. A special election is hereby ordered to be held throughout the State of Oklahoma on the date of the next special election or September 15, 1970, whichever is earlier, at which the proposed amendment to the Constitution of the State of Oklahoma, as set forth in SECTION 1 of this resolution shall be submitted to the people of Oklahoma for their approval or rejection as and in the manner provided by law.

ENGR. S.J.R. NO. 17

Passed the Senate the 1st day of April, 1969.

/s/
President of the Senate

Passed the House of Representatives the 10th day of April, 1969

/s/
Speaker of the House of
Representatives

**42.** The provisions of Art. V, § 43, Okl. Const., are:

"The Legislature *shall,* in the year nineteen hundred and nine *and each ten years thereafter,* make provision by law for revising, digesting, and promulgating the statutes of the State." [Emphasis supplied.]

*defect* that might otherwise invalidate it,[43] inclusion in the codification of a statute which has been repealed by substitution does *not* inevitably give the discarded statute untrammeled viability.[44] The text of Art. XV, § 1, provides that "the Legislature *may prescribe* further oaths or affirmations" in addition to the constitutional oath. From the mere failure of the codifiers to excise § 2 from the next succeeding decennial compilations, we *cannot infer the Legislature's intent to destroy* that section's pedigree as a carbon-copy of the Art. XV, § 1 oath and to recast it into a totally new and different role as a viable mandatory supplemental oath. As we review the question before us, Petitioner *has the burden* to show the Legislature's postamendment intent to transform § 2's text from a mirror image of yesteryear's first-generation, *supplanted* oath into an independently viable *supplemental* oath.[45]

In the wake of the '69 vote by the people, 51 O.S.1961 § 2 stood *replaced* by implied repeal by substitution and was brought into *conformity with the new constitutional oath.* The Legislature unquestionably had the *power* to give § 2's pre-amendment text an inde-

pendent existence as the state's new mandatory supplemental oath; if that was indeed its intent, that goal could not be accomplished without some affirmative action.[46] Neither textually demonstrable indicia nor any legislative history has been advanced here in support of § 2's intended transformation by a conscious legislative recognition.

### C.

**THE LONG–STANDING ADMINISTRATIVE TREATMENT OF 51 O.S.1961 § 2 (AS HAVING BEEN MODIFIED TO REFLECT THE LANGUAGE APPROVED BY THE 1969 CONSTITUTIONAL AMENDMENT) IS REASONABLE; WE HAVE BEEN GIVEN NO COGENT REASONS TO UNSETTLE THAT CONSTRUCTION**

Until today, this court has never considered the postamendment status of § 2 nor has it decided whether the 1969 Amendment brought it into conformity status with the new constitutional text.[47] *A 1987 opinion of the Attorney General construes the § 2 oath*

**43.** *See Allen v. Retirement Sys. For Just. & J.,* Okl., 769 P.2d 1302, 1305 (1988). *See also Bernstein v. Connecticut Fire Insurance Company,* Okl., 315 P.2d 232, 233 (1957); Bandy v. R.H. Fulton and Company, Okl., 312 P.2d 875, 879 (1957); *Atchley v. Board of Barber Examiners of State,* 208 Okl. 453, 257 P.2d 302, 305 (1953) and *Atlas Life Ins. Co. v. Rose,* 196 Okl. 592, 166 P.2d 1011, 1014 (1946).

**44.** *State ex rel. Williamson v. Empire Oil Corporation,* Okl., 353 P.2d 130, 135 (1960). *See Ex Parte Autry,* 58 Okl.Cr. 88, 50 P.2d 239, 241 (1935); *Crowdis v. State,* 59 Okl.Cr. 297, 58 P.2d 154, 156 (1936); *Hart v. State,* 59 Okl.Cr. 396, 60 P.2d 411, 412 (1936); *Hines v. Harmon,* 178 Okl. 1, 61 P.2d 641, 644 (1936) (overruled on other grounds, 108 P.2d 174 [1940]); and *Jamison v. Admiralty Zinc Co.,* 186 Okl. 13, 96 P.2d 26, 28 (1939). *See also* Sutherland Stat Const § 28.08 (5th Ed), citing *Ex parte Olden,* 88 Okl.Cr. 56, 199 P.2d 228, 238 (1948).

**45.** *See Hamrick v. George,* Okl., 378 P.2d 324, 328–329 (1963), where the court distinguishes *Empire Oil, supra* note 44, from *Atchley, supra* note 43. In each instance the question whether inclusion in the decennial codification resulted in reenactment of a repealed law depended upon the *Legislature's intent.* In *Williamson,* the Leg-

islature had adopted a complete and comprehensive new law intended not only as a substitute for an earlier act, but also to cover the whole subject matter then under consideration. There, as in today's proceeding, mere inclusion in the codification of a statute which had been repealed by substitution did not give it the effect of law. By contrast, *inclusion* had the effect of reenactment in *Atchley* since the Legislature *had declared* its policy of regulating the practice of the barber trade in the interest of public health.

**46.** The Legislature is not unacquainted with the process of expressly declaring a statutory oath to be cumulative. *See* 51 O.S.1951 § 36; 51 O.S.Supp.1953 § 36.2; 51 O.S.Supp.1983 § 36.-2A. *See also Wieman v. Updegraff,* 344 U.S. 183, 97 L.Ed. 216, 73 S.Ct. 215 (1952), in which the Court held 51 O.S.1951 § 1 unconstitutional.

**47.** The references to 51 O.S. § 2 in *State ex rel. Oklahoma Tax Com'n v. Mourer,* Okl., 596 P.2d 882, 886 (1979), do *not* give rise to the court's *approval of the non-conforming text as surviving the 1969 adoption of the constitutional amendment that changed Art. XV, § 1. That question was not before the court in Mourer.*

*as having been modified to so conform.*[48] Although the state constitution establishes the office of the attorney general,[49] its duties and responsibilities are prescribed by statute.[50] As the state's chief law officer, the attorney general has been entrusted with the duty of providing legal guidance to public officers and of advising them on questions of law which relate to their official duties.[51]

An Attorney General's opinion, though *always* merely advisory on a constitutional issue,[52] is nonetheless binding upon the state officials whom it affects.[53] Public officers have the duty to follow those opinions until they are judicially relieved of compliance.[54] Since a public officer's failure to *heed* the attorney general's *advice to perform a duty required by law* can result in *civil penalties,* it also follows from the sound principles of policy that one who *acts in conformity with the A.G.'s advice* should be afforded *the law's protection from civil liability as well as from forfeiture of office,* at least until a clear judicial pronouncement would indicate a different course of conduct.[55]

Acting on the Attorney General's advice, state officials have followed the long-standing administrative construction that rendered ineffective the provisions of § 2. Of the most recent oaths filed with the Secretary of State by executive, judicial and legislative branch members, only those filed in the pre–1969 form of § 2 are (with one exception) from a handful of lawmakers who may have identified with the Petitioner's lawsuit. Their newly delivered § 2 oaths were filed, *not* when they originally took office, but rather, *after* Petitioner had initiated this proceeding in November 1993.[56]

A construction placed upon a statute or upon a constitutional provision by those charged with its administration—especially one of a long and continued duration—while not controlling, is entitled to be given great weight.[57] Unless that construction is found clearly wrong, it should not be cast aside.[58]

*The Governor has complied with the Attorney General's 1987 opinion.* This court has *not* found the A.G.'s construction of § 2 to be unsound, given the intent of the 1969 Constitutional Amendment which reconstituted the entire oath regime.

**48.** *See* Opinions of the Attorney General, No. 86–148 (Jan. 9, 1987).

**49.** Art. VI, § 1, Okl. Const.

**50.** The terms of 74 O.S.1991 § 18b provide in pertinent part:

"The duties of the Attorney General as the chief law officer of the state shall. be:

\* \* \* \* \* \*

(e) To give his opinion in writing upon all questions of law submitted to him by the Legislature or either branch thereof ...

(q) To respond to any request for an opinion of his office, submitted by a member of the Legislature, regardless of subject matter, by written opinion determinative of the law regarding such subject matter."
*See also* 75 O.S.1901 § 26.1.

**51.** Many public officials are not lawyers. Legal assistance often is needed if the law's functional meaning cannot be ascertained from its text and without its construction by an exercise of professional skills.

**52.** *State ex rel. York v. Turpen,* Okl., 681 P.2d 763, 765 (1984).

**53.** *State v. District Ct. of Mayes Cty.,* Okl., 440 P.2d 700, 707 (1968); *Rasure v. Sparks,* 75 Okl. 181, 183 P. 495, 498 (1919). *See Pan American Petroleum v. Bd. of Tax–Roll Corrections of Tulsa Cty.,* Okl., 510 P.2d 680, 681–682 (1973); *Turpen, supra* at 768 (Opala, J., concurring).

**54.** *See* the authorities *supra* note 53.

**55.** *Rasure, supra* note 53, 183 P. at 498; *Mayes, supra* note 53 at 707; *Pan American, supra* note 53 at 681–682.

**56.** Petitioner's quest began November 2, 1993. Petitioner filed his § 2 oath November 3, 1993. Eight Senators followed suit on November 10, 1993.

**57.** *Oral Roberts University v. Okl. Tax Com'n,* Okl., 714 P.2d 1013, 1014–1015 (1986). *See Berry v. Public Emp. Retirement System,* Okl., 768 P.2d 898, 900 (1989); *Mazzio's Corp. v. Oklahoma Tax Com'n,* Okl., 789 P.2d 632, 634 (1989).

**58.** *Oral Roberts, supra* note 57 at 1015; *Berry, supra* note 57 at 900; *Mazzio's, supra* note 57 at 634.

## SUMMARY

When assuming original cognizance this court may choose but one of multiple issues tendered for its resolution of an urgent public-law controversy. As a lawmaker, the Senator has an interest in knowing whether the Senate's official interdepartmental affairs with the Governor are being carried out legitimately, in accordance with the Constitution. The Senator hence has standing to seek this court's pronouncement on whether the governor's office stands occupied or became vacant by forfeiture due to the incumbent's failure to take an oath in the form prescribed by 51 O.S.1961 § 2.

The 1969 Amendment of the provisions of Art. XV, § 1, Okl. Const., was intended to revamp the oath regime, repealing by substitution the § 2 oath and requiring the Legislature to act *affirmatively* in an effort to transform the text of § 2 into a mandatory supplemental oath. No indicia for this intended transformation have been advanced by the burden-bearing Petitioner and none have been found through our research. Post–1969 administrative interpretation of § 2, coupled with our own analysis, compels the conclusion that public officials are not required to take the oath which was last effectively prescribed by 51 O.S.1961 § 2.

**ORIGINAL JURISDICTION ASSUMED; THE COURT PRONOUNCES THE GOVERNOR HAS NOT FORFEITED HIS OFFICE BY FAILURE TO TAKE AN OATH IN THE FORM PRESCRIBED BY THE PROVISIONS OF 51 O.S.1961 § 2.**

HODGES, C.J., LAVENDER, V.C.J., and SIMMS, HARGRAVE, ALMA WILSON and KAUGER, JJ., concur.

SUMMERS, J., concurs in result.

WATT, J., disqualified.