OSCN Found Document:FUGATE v. STITT

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 FUGATE v. STITT
2025 OK 54
Case Number: 122911
Decided: 09/08/2025
As Corrected: September 11, 2025 THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2025 OK 54, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

STATE OF OKLAHOMA ex rel., Representative ANDY FUGATE, in his official capacity as a Member of the Oklahoma House of Representatives (House District 94) Plaintiff/Appellant,
v.
KEVIN STITT, in his official capacity as Governor of the State of Oklahoma, Defendant/Appellee.

ON APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY
HONORABLE C. BRENT DISHMAN, DISTRICT JUDGE

¶0 State Representative Andy Fugate filed a Petition for Declaratory Judgment and Injunctive Relief and an Application for Temporary Restraining Order requesting the district court bar enforcement of Governor Kevin Stitt's Executive Order requiring full-time state agency employees to return to in-office work and find the Order to be null and void for violating the separation of powers doctrine. The district court dismissed the case finding Representative Fugate lacked standing. Representative Fugate appealed and we retained the matter. We affirm the district court's dismissal.

MATTER PREVIOUSLY RETAINED FOR DISPOSITION;
ORDER OF THE DISTRICT COURT AFFIRMED. 

Richard C. Labarthe and Alexey V. Tarasov, LABARTHE & TARASOV, a professional association, Norman and Oklahoma City, Oklahoma for Plaintiff/Appellant.

Benjamin L. Lepak, Audrey A. Weaver, and Remington Dean, Office of Governor J. Kevin Stitt, Oklahoma City, Oklahoma for Defendant/Appellee.

OPINION

ROWE, C.J. 

¶1 On December 18, 2024, Governor J. Kevin Stitt ("Governor") issued Executive Order 2024-29 (the "Executive Order"), directing all full-time employees of state agencies to "perform their work in the office, facility, or field location assigned by their agency, and not from a remote location by February 1, 2025," 

¶2 State Representative Andy Fugate ("Representative Fugate") filed a Petition for Declaratory Judgment and Injunctive Relief on February 21, 2025 in opposition to the Executive Order. Representative Fugate contended that the Governor effectively created a new law by and through the Executive Order which usurped legislative authority. Representative Fugate requested that the district court find the Executive Order null and void and grant injunctive relief to permanently bar enforcement of the Executive Order. The Governor challenged Representative Fugate's legal standing to file the petition, arguing Representative Fugate did not suffer an actual and concrete injury. Moreover, the Governor argued in the event Representative Fugate did have standing, he could not meet the elements necessary to obtain injunctive relief.

¶3 The district court found Representative Fugate failed to establish that he suffered a concrete injury sufficient to support standing. 

STANDARD OF REVIEW 

¶4 De novo review is the proper standard for reviewing the district court's grant of a motion to dismiss. Wells v. Oklahoma Roofing & Sheet Metal, L.L.C., 2019 OK 45457 P.3d 1020De novo review involves a plenary, independent, and non-deferential examination of the issues presented. Benedetti v. Cimarex Energy Co., 2018 OK 21415 P.3d 43Osage Nation v. Bd. of Commissioners of Osage Cnty., 2017 OK 34394 P.3d 1224Wells Fargo Bank, N.A. v. Heath, 2012 OK 54280 P.3d 328

DISCUSSION 

¶5 Without standing, Representative Fugate lacks the legal right to seek relief in a judicial forum. Fent v. Contingency Rev. Bd., 2007 OK 27163 P.3d 512Toxic Waste Impact Grp., Inc. v. Leavitt, 1994 OK 148890 P.2d 906Matter of Estate of Doan, 1986 OK 15727 P.2d 574Id. 

¶6 The three threshold criteria of standing are (1) a legally protected interest which must have been injured in fact i.e., suffered an injury which is actual, concrete and not conjectural in nature, (2) a causal nexus between the injury and the complained-of conduct, and (3) a likelihood, as opposed to mere speculation, that the injury is capable of being redressed by a favorable court decision. Fent, 2007 OK 27Leavitt, ¶ 8, 890 P.2d at 910. "When a member of the law-making assembly initiates legal proceedings in a representational capacity as a senator or member of the House of Representatives, that legislator can claim no elevated status in establishing standing." Hendrick v. Walters, 1993 OK 162865 P.2d 1232 Id.

¶7 We have consistently held that standing to raise issues in a proceeding must be predicated on an interest that is "direct, immediate and substantial." Wells Fargo Bank, N.A. v. Heath, 2012 OK 54280 P.3d 328

¶8 Conversely, Representative Fugate broadly asserts that his injury derives from the Executive Order's usurpation of legislative authority. Representative Fugate contends the Executive Order "legislates new standards for all full-time state employees and compels agencies to incur potential new costs related to in-person work," 

¶9 We agree with the Governor's position that the Executive Order exclusively applies to Executive branch employees; therefore, Representative Fugate cannot claim the Executive Order causes him any direct harm in that regard. Nonetheless, Representative Fugate contends our state's standing jurisprudence confers standing upon legislators to defend legislative prerogatives and prevent usurpation of legislative power. Representative Fugate relies heavily on Hendrick v. Walters, 1993 OK 162865 P.2d 123251 O.S.1961, § 2Id. ¶ 6, 865 P.2d at 1238. Hendrick presented a unique scenario in which a member of the House of Representatives or a Senator had standing to maintain the effectiveness of his or her individual vote. 

¶10 Unlike the senator in Hendrick, Representative Fugate has not seen his votes affected by the Executive Order. Hendrick does not support Representative Fugate's position that he possesses standing in this case.

¶11 Additionally, the parties argue extensively whether only a presiding officer of the Legislature has standing to sue on behalf of the Legislature when legislative authority has allegedly been usurped. See State ex rel. Howard v. Okla. Corp. Comm'n, 1980 OK 96614 P.2d 45State ex rel. York v. Turpen, 1984 OK 26681 P.2d 763

¶12 Representative Fugate alleges the Executive Order inhibits a legislator from conducting legislative business and violates "statutory law"m]ake, amend, and rescind the necessary orders and rules to carry out the provisions of the [Act] . . . ." 63 O.S. § 638.8(D)(1) (emphasis added).

¶13 Representative Fugate correctly highlights in a footnote in his Emergency Application for Temporary Restraining Order and Temporary Injunction that Executive Order 2020-20, signed by the Governor on May 30, 2020, ordered state agencies--pursuant to the Act--to implement remote work policies, promulgate emergency rules, and limit non-essential out-of-state travel pursuant to the Act. 

¶14 The Executive Order explicitly highlights that because the Federal Government determined the COVID-19 Public Health Emergency ended on May 11, 2023, "the conditions necessary for non-traditional work environments have been alleviated." 

CONCLUSION

¶15 To establish standing, a plaintiff must prove (1) a legally protected interest which must have been injured in fact i.e., suffered an injury which is actual, concrete and not conjectural in nature, (2) a causal nexus between the injury and the complained-of conduct, and (3) a likelihood, as opposed to mere speculation, that the injury is capable of being redressed by a favorable court decision. Fent, 2007 OK 27. Representative Fugate has failed to demonstrate that he--in his official capacity--has suffered an injury in fact. Representative Fugate has not seen his votes affected by the Executive Order, nor can Representative Fugate successfully demonstrate the Executive Order usurps legislative power. Accordingly, we find Representative Fugate lacks standing. The district court's dismissal is affirmed.

MATTER PREVIOUSLY RETAINED FOR DISPOSITION;
ORDER OF THE DISTRICT COURT AFFIRMED. 

Rowe, C.J., Kuehn, V.C.J., Winchester, Edmondson (by separate writing), Gurich, Darby, Kane and Jett, JJ., concur.

Combs, J. (by separate writing), dissents.

FOOTNOTES

Id. at 8.

See also Coleman v. Miller, 307 U.S. 433, 438 (1939) (finding state legislators have a "plain, direct and adequate interest in maintaining the effectiveness of their votes" which give them standing to challenge the constitutionality of a lieutenant governor's tie-breaking vote); Kennedy v. Sampson, 511 F.2d 430, 433-34 (D.C. Cir. 1974) (finding a U.S. Senator has standing to challenge the President's use of the pocket veto); Risser v. Thompson, 930 F.2d 549, 550-551 (7th Cir.1991) (finding state legislators have standing to challenge the governor's partial veto power).

Russel Petroleum Company v. Walker, 19 P.2d 582

Id.

 

 

EDMONDSON, J., with whom GURICH, DARBY, and KANE, JJ., join concurring.

¶1 I write separately to explain why I concur with the Court's opinion.

¶2 Our Court has a long history of recognizing the three separate elements of a trial court's jurisdiction, jurisdiction over the person, jurisdiction over the subject--matter, and jurisdiction to render the particular judgment, and "[e]ach element of jurisdiction is dependent upon both law and fact." relating to jurisdiction may be classified as jurisdictional and quasi-jurisdictional for certain purposes. de novo for both jurisdictional and non-jurisdictional assigned errors of law. 

¶3 The Court has frequently discussed the "jurisdiction" or "power" of the trial court invoked by a party seeking declaratory judgment relief, and we have linked the concept of justiciability when declaratory relief is sought with the jurisdiction of the trial court to grant such relief. 12 O.S. § 1651

¶4 The declaratory relief action was brought by a member of the Legislature in his "official capacity." His legally protectable justiciable interest must be possessed by him in his official capacity. An undisputed issue of fact and law herein is that petitioner and any public employees under petitioner's direction and control are not part of the Executive Department, and the challenged Executive Order applies solely to public employees under the direction and control of the Executive Department. 

¶5 Petitioner argues the Executive Order both impedes the ability of legislators to conduct legislative business and violates "statutory law." Petition, at pg.2. Petitioner's emergency application for a temporary restraining order states that: "Later, executive orders - such as Executive Order 2020-20 issued on May 30, 2020, which relied on the Oklahoma Emergency Management Act of 2003 - ordered state agencies to institute remote work policies, promulgate emergency rules, and limit non-essential out-of-state travel." Emergency Application, at pg. 3.

¶6 The Oklahoma Emergency Management Act of 2003, 63 O.S. §§ 683.163 O.S. §683.2and rescind the necessary orders and rules to carry out the provisions of the Oklahoma Emergency Management Act of 2003 within the limits of authority conferred upon the Governor herein, with due consideration of the emergency management plans of the federal government." 63 O.S.§ 683.963 O.S. §683.9

¶7 The petition and application for a temporary restraining order and temporary injunction do not cite any specific provision of the Oklahoma Emergency Management Act of 2003 allegedly violated by the Governor. Petitioner states the Governor's original Executive Order authorizing alternative locations for Executive Department employees to work was pursuant to the Governor's authority pursuant to the Act. Petitioner does not allege an arbitrary exercise of a power pursuant to the Act occurred when the Governor rescinded another order previously issued pursuant to the same Act.

¶8 Petitioner's argument also appears to include a complaint that the Governor's Executive Order did not merely rescind a previous Executive Order and restore employees to their employment status quo ante COVID (state of things before Covid), but required a new condition of employment state-wide for Executive Department employees. Petitioner alleges such an Executive Order intrudes upon legislative power. Title 74 of the Oklahoma Statutes contains many provisions governing state employees. Petitioner does not point to any statute in Title 74 allegedly violated by the Governor. Petitioner does not point to any provision in Executive Order, No. 2024-29, that would prevent the Legislature from creating future legislation concerning Executive Department employees and their locations for performing their duties. The Court's opinion states petitioner's allegations fall short of pleading an institutional injury to the Legislature in this case. I agree.

¶9 Petitioner's allegations do not plead a justiciable controversy in this case. The allegations state the Executive Order is based in part upon express statutory authority, and also in part upon statutory authority that has not been conferred on the Governor but also has not been expressly withheld when the Governor manages Executive Department employees. Petitioner's argument does not show a challenged Executive Order containing substance that is exclusively legislative pursuant to either the Oklahoma Constitution or current statutes. I concur with affirming the District Court.

FOOTNOTES

Abraham v. Homer, 1924 OK 393102 Okla. 12226 P. 45

Chandler v. Denton, 1987 OK 109747 P.2d 938

McCarney v. Ford Motor Co., 657 F.2d 230, 233 (8th Cir. 1981) (standing is a part of the concept of justiciability, which includes the questions of advisory opinions, mootness and ripeness, and a dismissal based on any of these concepts "which are quasi jurisdictional" does not preclude a second action on the same claim if the justiciability problem can be overcome) (emphasis added); Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 126--128, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014) (discussed the "'prudential' branch of standing" as encompassing three broad principles: "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked," and quoted with approval an assessment stating prudential standing as a zone-of-interests assessment was a misnomer when the issue was whether a party had a right to sue under a substantive statute); cf. Finstad v. Beresford Bancorporation, Inc., 831 F.3d 1009, 1014 (8th Cir. 2016) (dismissal for lack of statutory standing is a ruling on the merits).

Tulsa Indus. Auth. v. City of Tulsa, 2011 OK 57270 P.3d 113Gordon v. Followell, 1964 OK 74391 P.2d 242Dutton v. City of Midwest City, 2015 OK 51353 P.3d 532

Berkson v. State ex rel. Askins, 2023 OK 70532 P.3d 36

Knox v. O.G. & E., 2024 OK 37549 P.3d 1260de novo on appeal.); Young v. Station 27, Inc., 2017 OK 68404 P.3d 82912 O.S. § 2012de novo); Reeds v. Walker, 2006 OK 43157 P.3d 100de novo.).

Tulsa Indus. Auth. v. City of Tulsa, supra at note 4.

Tulsa Indus. Auth. v. State, 1983 OK 99672 P.2d 299

 

 

 

COMBS, J., dissenting:

¶1 I dissent to the majority opinion. I would reverse the trial court's order dismissing Representative Fugate's Petition for lack of standing, and would remand the case for a first-instance determination of the merits of his claims.

¶2 The majority opinion has omitted some important aspects of our traditional standard of review in appeals concerning district court dismissal based on a plaintiff's lack of standing. In such appeals, we've repeatedly said:

A trial court's judgment dismissing a petition is reviewed de novo. When ruling on a motion to dismiss for lack of standing, the trial court and the appellate court must accept the petition's allegations and all inferences that can be drawn from them as true. The party seeking relief has a greater burden to show she has standing in later stages of the proceedings than when defending a pretrial motion to dismiss.

Eldredge v. Taylor, 2014 OK 92339 P.3d 888

When ruling on a pretrial motion to dismiss for lack of standing, the trial court, and subsequently the reviewing court, "must construe the petition in favor of the complaining party." If the plaintiff alleges facts which are sufficient to establish standing, then the case proceeds to the next stage. A party's standing may be examined at any stage of the proceedings, and the party seeking relief has a great burden at later stages in the case than in defending a pretrial motion to dismiss.

Okla. Educ. Ass'n v. State ex rel. Okla. Legislature, 2007 OK 30158 P.3d 1058

[S]tanding does not depend on the merits of the plaintiff's contention that particular conduct is illegal. Before a litigant possesses standing as a proper party to seek injunctive relief, it must be alleged that: the challenged action has caused him/her injury in fact; the relief sought would remedy the injury; and, the interest sought to be protected is within the zone of interest to be protected or regulated by the statute in question. For purposes of ruling on a motion to dismiss for lack of standing, the trial court and the reviewing court must construe the petition in favor of the complaining party. It is not necessary to decide whether a litigant will ultimately be entitled to any relief in order to hold that the party has standing to seek judicial redress for his/her grievance.

Indep. Sch. Dist. No. 9 of Tulsa Cty., 1982 OK 2

¶3 The majority dismisses Representative Fugate's assertion that our standing jurisprudence confers standing upon legislators to defend legislative prerogatives and to prevent usurpation of legislative power. See Majority Op. ¶ 9. In Hendrick v. Walters, 1993 OK 162865 P.2d 1232

One commentator categorizes the injuries which may be suffered by legislators as (1) diluted vote, (2) usurpation of legislative power, and (3) diminished effectives in carrying out legislative duties absent a judicial declaration. Benck, Standing For State And Federal Legislators, 23 Santa Clara L. Rev. 811, 821 (1983). Another authority theorizes a legislator has standing "(1) as an advocate of traditional individual interest that happens to be connected with legislative activities; (2) as a representative of his or her constituents; (3) as an officially designated representative of a legislative body, typically challenging allegedly unlawful executive action; or (4) as a vindicator of his or her alleged personal interest in full exercise of official legislative powers." [Emphasis supplied.] L. Tribe, American Constitutional Law § 3-20 (2d Ed. 1988).

1993 OK 162

¶4 Representative Fugate contends the Governor has usurped the legislative prerogative insofar as the Governor has exercised power he no longer possessed under the Oklahoma Emergency Management Act of 2003. See Emergency Appl. for TRO & Temp. Inj. & Br. in Supp. 3 n.1. More specifically, Representative Fugate contends that any authority the Governor had to require state employees either to work from home or to return to the office pursuant to the Catastrophic Health Emergency Powers Act, 63 O.S.2011 & Supp.2020, §§ 6101 et seq., was terminated when the Legislature passed a concurrent resolution terminating the catastrophic health emergency effective May 30, 2020 pursuant to section 6405(C) of that Act. Emergency Appl. for TRO & Temp. Inj. & Br. in Supp. 3 n.1 (referencing S. Con. Res. 2X, 57th Leg., 1st Extra. Sess. (Okla. 2020)). He further argues that any similar authority the Governor had under the Oklahoma Emergency Management Act of 2003, 63 O.S.2011 & Supp.2020, §§ 683.1 et seq.--including the authority to rescind Executive Order No. 2020-20 pursuant to section 683.8(D)(1)--had expired effective May 4, 2021, because of an executive order the Governor himself entered rescinding Oklahoma's COVID-19 state of emergency. Emergency Appl. for TRO & Temp. Inj. & Br. in Supp. 3 n.1 (referencing Exec. Order No. 2021-11, 38 Okla. Reg. 757 (June 1, 2021), withdrawing & rescinding 2d Am. Exec. Order No. 2021-07, 38 Okla. Reg. 743 (May 3, 2021)). It would appear this is what Representative Fugate meant when he said, "Executive Order 2024-29 is void, as it violates separation of powers and exceeds the Governor's authority under the Oklahoma Constitution and statutory law." The majority's assertion that "Representative Fugate alleges the Executive Order . . . violates 'statutory law'--yet fails to point to a statute the Governor allegedly violated," see Majority Op. ¶ 12, is incorrect.

¶5 Representative Fugate further alleges that Executive Order 2024-29 "purport[s] to dictate new statewide policy for state employment conditions--namely, banning remote or hybrid work unless narrowly excepted--without legislative enactment or appropriation" that will be needed to cover "the inevitable additional expense for office expansions or facility upgrades -- arising from a full return-to-office mandate." Pet. for Decl. & Inj. Relief ¶¶ 18, 20, at 4--5. Therein lies the injury, i.e., the Governor's usurpation of legislative authority in violation of the separation-of-power principles found in Article IV, Section 1 and Article V, Section 1 of the Oklahoma Constitution. Russell Petroleum Co. v. Walker, 1933 OK 7519 P.2d 582Id. ¶ 19, 19 P.2d at 587. Thus, a string of State Attorneys General have all concluded that "Executive Orders intended to accomplish a legislative result are invalid." Question Submitted by James R. Barnett, Acting Dir., Okla. Water Res. Bd., 1977 OK AG 191accord Question Submitted by Hon. Jim Glover, Okla. H.R., 1988 OK AG 32Walker court makes it clear 'that executive orders designed to accomplish a legislative result are invalid.' . . . [T]he Governor may not exercise legislative power by means of an executive order." (quoting Question Submitted by Sen. John W. Young, Op. No. 73-107, 6 Op. Att'y Gen. 16, 19 (Okla. 1973))); Question Submitted by Hon. Don McCorkell, State Rep., Dist. 72, 1996 OK AG 31see Okla. Const. art. X, § 23, the Governor's unilateral policy-making action commits the Legislature to finding funds for appropriations to enable a return-to-work policy they never approved or enacted for various reasons, see Pet. for Decl. & Inj. Relief ¶ 16 (giving multiple reasons that state legislators balked at such a policy). That, in essence, implicates Representative Fugate's effectiveness in carrying out legislative duties related to appropriations, giving rise to a more personal injury that this Court previously found sufficient to confer standing upon the legislator in the Hendrick case. See Hendrick, 1993 OK 162

¶6 This analysis admittedly bleeds into the merits of Representative Fugate's claims for declaratory and injunctive relief. The majority provides limited authority trying to justify the Governor's legal basis for issuing the return-to-work executive order. See Majority Op. ¶¶ 13--14. This appeal has been raised at the motion-to-dismiss stage in the early phases of pretrial proceedings before the district court; the appealed order of dismissal was entered a mere eighteen days after Representative Fugate commenced this litigation. Because I find Representative Fugate has made a prima facie showing of standing and injury-in-fact, I dissent to the majority's affirmance of dismissal for lack of standing. I would reverse and remand the matter back to the district court for a determination on the merits.

FOOTNOTES

shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others," id. art. IV, § 1 (emphasis added).

 
 
 
 
 
 
 
 
 
 The Oklahoma Supreme Court
 2100 N. Lincoln Blvd., Suite 1
 Oklahoma City, OK 73105