OSCN Found Document:Question Submitted by: Brenda Hoefar, Interim Director, Office of Disability Concerns

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 Question Submitted by: Brenda Hoefar, Interim Director, Office of Disability Concerns
2023 OK AG 14
Decided: 12/01/2023
Oklahoma Attorney General Opinions

Cite as: 2023 OK AG 14, __ __

 

¶0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
1. Is the Commissioners of the Land Office subject to the laws of the State Use Advisory Council and the Central Purchasing Act despite a constitutional mandate to maximize benefits for the beneficiaries of the sacred trust held for the benefit of Oklahoma common schools? 2. Is it unlawful for a state agency to purchase a unit of real estate that is subject to a building association, established under the Unit Ownership Estate Act, which provides products or services listed on the State procurement schedule to each unit? 
I.
SUMMARY
¶1 The Commissioners of the Land Office ("CLO" or "Commissioners") is subject to the laws of the State Use Advisory Council and the Central Purchasing Act except where the laws conflict with the CLO's constitutional mandate to maximize benefits to current and future beneficiaries of the School Lands Trust. See Hendrick v. Walters, 1993 OK 162, ¶ 7, 865 P.2d 1232, 1238 (the Oklahoma Constitution is the State's highest law and the bulwark to which all statutes must yield). The CLO is an office within the executive branch of state government and is made up of officials within the executive branch. Four of the five commissioners are constitutionally vested with executive authority for the State. Even more, the CLO already acknowledges it is required to comply with the Central Purchasing Act. However, an impermissible conflict between these statutes and the CLO's constitutional mandates exists when the CLO determines that there is a lower market price available than the statewide mandatory contracts for the same product or service. In such case, once the lower market price is verified by the CLO through compliance with the fair market analysis process approved by the Office of Management and Enterprise Services Central Purchasing Division, the State Use contracting officer must grant a temporary exemption to the CLO permitting it to obtain the lower market price.
¶2 The answer to the second question involves a factual dispute that is outside the scope of an Attorney General Opinion. Specifically, the second question turns on whether the purchase of real estate is an "evasion" of the laws of the State Use Advisory Council under title 74, section 3007 of the Oklahoma Statutes, and whether the intent of any state agency-owner within the Strata building was to purchase real estate in addition to janitorial services. Because Attorney General Opinions are limited to questions of law, these factual disputes are not resolved in this opinion.II.
BACKGROUND
A. The Central Purchasing Act and statewide mandatory contracts
¶3 This office recently provided a thorough background on the Central Purchasing Act. 2023 OK AG 4. That background is incorporated into this opinion by reference. Subject to a number of exceptions and exemptions, the Central Purchasing Act generally governs state agency acquisitions of goods and services.
¶4 The State Use Advisory Council was created within the Office of Management and Enterprise Services ("OMES"). 74 O.S.Supp.2022, § 3001. The general purpose of the program is to provide employment opportunities for disabled individuals by creating a process for awarding certain state contracts to qualified non-profit agencies that employ a high percentage of individuals with disabilities. To fulfill these purposes, OMES Central Purchasing Division ("Central Purchasing") designates a procurement schedule of "services directly performed, offered or provided by any person with significant disabilities or qualified nonprofit agency for the employment of people with significant disabilities . . . ." 74 O.S.Supp.2022, § 3004.
¶5 Whenever state agencies "intend[] to procure any product or service included in the procurement schedule," they must purchase the product or service under mandatory contracts, awarded by Central Purchasing, at "the fair market price" determined by Central Purchasing. Id. §§ 3004, 3007. State agencies also may not "evade the intent and meaning" of this requirement "by slight variations from standards." Id. § 3007(B). Procurements made pursuant to the schedule are exempt from competitive bid requirements under the Central Purchasing Act. 74 O.S.Supp.2022, § 3008. Further, Central Purchasing offers temporary exceptions to the "fair market price" requirement for purchasing products or services:
When the fair market price for a product or service approved by the Office of Management and Enterprise Services Central Purchasing Division exceeds a current market price for the same product or service and such lower market price has been verified by the agency through compliance with the fair market analysis process approved by the Office of Management and Enterprise Services Central Purchasing Division, the State Use contracting officer may grant a temporary exception to a requesting agency so that the agency may purchase the product or service from the supplier offering the lower market price.

Id. § 3008(C).B. The Oklahoma Constitution and Enabling Act 
¶6 The Oklahoma Constitution established the CLO for the purpose of administering the School Lands Trust, which:
[C]onsists of certain lands and funds granted to the State of Oklahoma upon its admission into the Union by the Enabling Act. The gift of these lands and funds under the Enabling Act was accepted irrevocably by the people of Oklahoma, and such acceptance was set out in the Oklahoma Constitution under Article XI, Section 1. These acceptance provisions of the Oklahoma Constitution and the Enabling Act constitute an irrevocable compact between the United States and Oklahoma, for the benefit of the common schools, which cannot be altered or abrogated.

Oklahoma Educ. Ass'n v. Nigh, 1982 OK 22, ¶ 6, 642 P.2d 230, 235.
¶7 The CLO is made up of "[t]he Governor, Lieutenant Governor, State Auditor and Inspector, Superintendent of Public Instruction, and the President of the State Board of Agriculture." 64 O.S.2021, § 1001(A); OKLA. CONST. art. VI, § 32. As outlined in the Oklahoma Constitution, the grants of land and money under the Enabling Act are to be kept as a "sacred trust." OKLA. CONST. art. XI, § 1. Additionally, "[t]he Commissioners of the Land Office shall be responsible for the investment of the permanent common school and other educational funds, and public building funds solely in the best interests of the beneficiaries and [] for the exclusive purpose of providing maximum benefits to current and future beneficiaries, and defraying reasonable expenses of administering the trust funds[.]" Id. § 6(B) (emphasis added). The Oklahoma Constitution also specifies that the CLO shall control the "funds and proceeds" of the trust "under the rules and regulations prescribed by the Legislature." OKLA. CONST. art. VI, § 32.C. The Oklahoma Commons Owners Association, Inc., and its state agency members
¶8 The Oklahoma Commons Owners Association, Inc ("Association") is organized as a not-for-profit corporation under the Unit Ownership Estate Act. 60 O.S.2021, § 501--530. The Association was created on August 31, 2020, by a private company, Oklahoma Commons, LLC, that transferred ownership of the units in the Strata building to various state agencies. Declaration of Unit Ownership Estate for Oklahoma Commons (Sept. 1, 2020) at 1 (on file with author) [hereinafter, Declaration]. Each owner of any unit within the Strata building is automatically a member of the Association and is entitled to vote. Declaration ¶ 4.2, at 11. The Association has a board of three directors that are elected by the majority in interest of the owners; each director "must be an Owner or a designated representative thereof" Id. ¶ 4.3, at 12.
¶9 The Association has the power to hire a management company to "carry out and perform the day-to-day duties and responsibilities of the Association," id. ¶ 4.5, at 13, and the Association's regulations, which are administered and enforced by the Association's board of directors, state that "[t]he Association will provide to each Owners janitorial services" but that "[o]wners of Units may elect to clean their Units without the assistance of the Association[.]" Regulations of Oklahoma Commons Unit Ownership Estate ¶ 3.30, at 7 (on file with author); Bylaws of Oklahoma Commons Owners Association, Inc. (Aug. 2020) ¶ 4.3.2, at 5 (on file with author). The Association collects payment for management, such as for janitorial services, from the owners of the units within the building. Declaration ¶ 4.5, at 13. Further, all voting members of the Association are state agency owners and all directors on the board are state agency officials or their representatives, so long as all owners remain state agencies.
¶10 Currently, the CLO, the Oklahoma Tourism and Recreation Department, the Oklahoma Tax Commission, and the Oklahoma Department of Health own all units within the Strata building. Although other private companies or state agencies may lease units, all units are owned by the aforementioned state agencies.
III.
DISCUSSION
A. The CLO is subject to statewide mandatory contracts. But where the fair market price is not the lowest on the market, the CLO shall receive a temporary exception to purchase the product or service at the lower price. 
¶11 Whether acquisitions by the CLO are subject to the Central Purchasing Act and the laws of the State Use Advisory Council turns on whether the CLO is a "state agency." The Legislature defined "State Agency" in the Central Purchasing Act as "any office, officer, bureau, board, counsel, court, commission, department, institution, unit, division, body or house of the executive or judicial branches of the state government, whether elected or appointed, excluding only political subdivisions of the state[.]" 74 O.S.2020, § 85.2 (emphasis added).[1]
¶12 In Oklahoma City v. Century Indemnity, Co., the Oklahoma Supreme Court identified three elements for determining whether a position is a public office. Those three elements are as follows:

1. the position was created or authorized by law;
2. the law imposes certain definite duties upon the position holder; and
3. the duties imposed involve the exercise of some portion of sovereign power.

1936 OK 589, ¶¶ 20--26, 62 P.2d 94, 97.
¶13 Without question, each of the three elements is satisfied here. First, the Oklahoma Constitution establishes the CLO for the purpose of administering the School Lands Trust, which consists of certain lands and funds granted to the State upon its admission into the Union by the Enabling Act. OKLA. CONST. art. VI, §§ 32--34; Oklahoma Educ. Ass'n v. Nigh, 1982 OK 22, ¶ 6, 642 P.2d 230, 235. To effectuate this purpose, the Commissioners are responsible for the investment of the permanent school fund to provide "maximum benefits to current and future beneficiaries" under rules and regulations prescribed by the Legislature. OKLA. CONST. art. XI, § 6(B). To do so, the Commissioners are empowered to sell, acquire, and exchange any real and personal property. 64 O.S.2021, § 1002. In fact, this office has previously recognized that by virtue of the "broad grant" of power in the Oklahoma Constitution, the Commissioners are vested with "complete jurisdiction and charge of the sale, rental, disposal and management" of the School Land Trust property and are, thus, vested with the power to accept and reject bids for the sale of such property. 1996 OK AG 1, ¶ 31 (citing Seltzer v. Comm'rs of the Land Office, 258 P.2d 1172, 1172 (Okla. 1953)). Accordingly, the CLO is clearly a public office.
¶14 In looking at its composition, it is equally clear that the CLO is within the executive branch of state government. The CLO is made up of "[t]he Governor, Lieutenant Governor, State Auditor and Inspector, Superintendent of Public Instruction, and the President of the State Board of Agriculture." 64 O.S.2021, § 1001(A); OKLA. CONST. art. VI, § 32. Stated otherwise, the Oklahoma Constitution vests four of the five members of the CLO with the executive authority of the State and the fifth member is an appointment of the Governor. Id. Each of these individuals are officers of the executive branch of state government. Thus, the CLO clearly constitutes an "office . . . of the executive . . . branch[] of the state government" and is governed entirely by officers within the executive branch, such that the CLO is within the definition of "State Agency" as defined by the Central Purchasing Act. 74 O.S.2021, § 85.2.[2]
¶15 But when the "fair market price" mandated by State Use Advisory Council is not the lowest price, the mandate to comply with the laws of the State Use Advisory Council and the Central Purchasing Act conflicts with the CLO's constitutional mandate to utilize the School Lands Trust income "for the exclusive purpose of providing maximum benefits to current and future beneficiaries[.]" OKLA. CONST. art. XI, § 6; 74 O.S.Supp.2022, § 3004; Hendrick, 1993 OK 162, 865 P.2d 1232. In such case, the exception provided within the statute for when a "lower market price has been verified by the agency through compliance with the fair market analysis process approved by the Office of Management and Enterprise Services Central Purchasing Division" must be utilized. 74 O.S.Supp.2022, § 3008(C). This exception ultimately permits the purchase of the product or service from the supplier offering a lower market price. Id. Thus, it provides harmony with the CLO's constitutional trust management responsibilities and the statutes that are intended to bind it.
¶16 Accordingly, the CLO is subject to statewide mandatory contracts. But where the fair market price is not the lowest on the market, the CLO shall receive a temporary exception to purchase the product or service at the lower price.B. The Association is subject to the Central Purchasing Act and the laws of the State Use Advisory Council if the state agency owners of units within the Strata building intended to procure the included janitorial services at the time of purchase. However, this involves a question of fact beyond the scope of an official Attorney General Opinion. 
¶17 This office previously analyzed 74 O.S.Supp.2022, § 3007(B) to determine "whether a competitive solicitation for a product or service that includes among its component parts individual products or services listed on the State Use procurement schedule is a slight variation from State Use standards as prohibited by [§ 3007(B)]." 2010 OK AG 12, ¶ 6. The opinion concluded that the test to determine if a state agency violates the laws of the State Use Advisory Council "turns on whether . . . the particular solicitation is for 'any product or service included in the procurement schedule.' This test must be applied to each solicitation on an individual case-by-case basis." Id. ¶ 7 (quoting 74 O.S.2001, § 3007(A), amended by 74 O.S.Supp.2022, § 3007(A)). One example of when this test applies is a solicitation for "comprehensive computer parts and service," which includes both computer replacement parts and repair service. Id. ¶ 9. Such solicitation does not violate the laws of the State Use Advisory Council because "comprehensive computer service is not a product or service listed on the [procurement] schedule," even though the included parts in the package are listed. Id.
¶18 In the present matter, various state agencies purchased real estate, subject to a Declaration and Regulations, which include janitorial services. A cursory review of the procurement schedule evidences that janitorial services are listed, but real estate is not. This office extends the test for solicitations to the purchase of real estate. Notably, whether the agencies are evading the requirements relating to the State Use Advisory Council hinges on their intent at the time of purchasing the property. If the agency purchases real estate, that includes incidental products or services listed on the procurement schedule, it does not violate the laws of the State Use Advisory Council unless the agency intended to evade purchasing restrictions applicable to those attendant products or services.
¶19 However, suppose the agency sought to purchase real estate that includes explicitly a product or service on the procurement schedule, or negotiates for the purchase to include such services. In that case, the agency does not intend to solely purchase real estate. As a result, this office will construe such agency action as an evasion of the laws relating to the State Use Advisory Council.
¶20 Regardless, whether any given purchase of real estate that includes products or services listed on the procurement schedule constitutes an "evasion" under 74 O.S.Supp.2022, § 3007(B) "is a question of fact beyond the scope of an official Attorney General Opinion." 2010 OK AG 12, ¶ 11; see 74 O.S.Supp.2022, § 18b(A)(5).¶21 It is, therefore, the official Opinion of the Attorney General that:

1. The CLO is only subject to the laws of the Council and the Central Purchasing Act where the laws do not interfere with their constitutional mandate to maximize benefits to current and future beneficiaries. The CLO is therefore subject to statewide mandatory contracts because, where fair market price is not the lowest price, the CLO shall receive a temporary exception and be granted the ability to purchase the product or service at the lower price. 
2. The proper test to apply in determining whether a solicitation by a state agency violates the laws of the State Use Advisory Council turns on whether a particular solicitation is for "any product or service included in the procurement schedule," 74 O.S.Supp.2022, § 3007(A). This test extends to the purchase of real estate. A state agency that intends to purchase real estate that explicitly includes products or services listed on the procurement schedule violates the laws of the State Use Advisory Council if the acquisition is inconsistent with its requirements. In contrast, a state agency does not violate the law when it seeks to purchase real estate, and products or services listed on the procurement schedule are coincidentally included with the property. However, applying this test to the Strata building is a question of fact beyond the scope of an official Attorney General Opinion. 

GENTNER DRUMMOND
ATTORNEY GENERAL OF OKLAHOMA
STEPHANIE ACQUARIO
ASSISTANT ATTORNEY GENERALFOOTNOTES

[1] Whereas the State Use Advisory statutes pertain to acquisitions by state agencies, these laws do not define the term "state agency." However, the laws of the State Use Advisory Council are companion to the Central Purchasing Act, which also pertains to state agency procurements. Statutes on the same subject are viewed in pari materia and interpreted together as a "coherent symmetry of legislation." Taylor v. State Farm Fire and Cas. Co., 1999 OK 44, ¶ 19, 981 P.2d 1253, 1261. Accordingly, the Central Purchasing Act's definition of "state agency" may be used as the operative definition for purposes of the State Use statutes.
[2] Further, the CLO already complies with the Act in a variety of ways. As of April 2023, the CLO had eight certified procurement officers that were certified by the state purchasing director to ensure the CLO's compliance with the Central Purchasing Act. Legislative Office of Fiscal Transparency, Rep. No. 23-090-01, Rapid Response Evaluation: Exemptions to the Central Purchasing Act (Apr. 2023). There are a few provisions of the Act in which it is clearly outlined that the CLO is exempt from those provisions. For example, the CLO's "process of selecting realtors" is statutorily exempt from the Central Purchasing Act, and the CLO is not subject to the competitive bidding requirements of the Central Purchasing Act for financial management consultants. 64 O.S. 2021, § 1004; 74 O.S.Supp.2022, §85.7(6)(a). But the Central Purchasing Act's list of overall exemptions does not list the CLO as exempted. Id. § 85.3A. This "demonstrates that the Legislature clearly intended the [CLO] to remain subject to the Central Purchasing Act." 1988 OK AG 61, ¶ 10.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.